ROBERTS et al. v. JOHNSON et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1907.)

No. 676.

BANKRUPTCY—CONVEYANCE WITH INTENT TO DEFRAUD—MONEY BORROWED TO GIVE PREFERENCE.

An insolvent, eight days before filing a petition in voluntary bankruptcy, executed a mortgage for borrowed money to a brother of a large creditor, covering substantially all of his property. The loan was arranged for by another brother of the creditor, who was also his agent for collection of the debt. The amount borrowed was slightly more than the claim, and was turned over in payment of the same before the debtor left the office where he received it. *Held*, that such facts justified a finding that the mortgagee knew, or had reasonable cause to believe, that the purpose of the transaction was to prefer his brother in violation of the bankruptcy act, notwithstanding his denial, and a decree setting aside the mortgage under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], as one given with intent to hinder, delay, and defraud other creditors.

Appeal from the District Court of the United States for the District of Maryland.

William A. Wheatley and William M. Maloy, for appellants.

Alonzo L. Miles (Phillips L. Goldsborough, on the briefs), for appellees.

Before GOFF, Circuit Judge, and BRAWLEY and McDOWELL, District Judges.

BRAWLEY, District Judge. The trustees of the bankrupt filed their bill of complaint in the District Court for the District of Mary-

land to set aside certain mortgages, alleging that they were made with intent to hinder, delay, and defraud the creditors of the bankrupt, and that the money borrowed on said mortgages was applied to the payment of an antecedent debt of the insolvent mortgagor, and this appeal is from the decree of that court adjudging said mortgages to be null and void as against the creditors of the bankrupt. The mortgages were executed and delivered to Oliver P. Roberts March 23, 1905, by T. Milbourn Bramble, who filed his voluntary petition in bankruptcy April 1, 1905, and was adjudicated a bankrupt April 11, 1905. Bramble had been engaged in the business of packing oysters and vegetables at Cambridge, Md., for about 10 years, and had become indebted to William H. Roberts, trading as "The Old Town Can Company," and a manufacturer of cans at Baltimore, for merchandise purchased at intervals from May, 1904, to February, 1905, and was indebted to him on the last-named date in the sum of $6,407.32. When desiring to purchase cans for the approaching season, he was informed that no further credit could be extended until that indebtedness was paid. Some time thereafter Roberts testifies that the Old Town Can Company told him that they had to have money. This information, he says, was given to him by Samuel Roberts, who "seemed to be the man who attended to the Old Town Can Company," who told him that he "could give me a man that would loan the money," and directed him to go to the office of Mr. Wheatley, the counsel of Roberts Bros. This conversation took place a few days before the mortgages were executed; the exact date is not stated, witness saying that it was probably a week before. Samuel Roberts is a brother of W. H. Roberts, who testified that he had no interest in the business of the Old Town Can Company, but acted as a broker and sold the cans manufactured by it to Bramble and others on commission. Oliver P. Roberts is another brother of William H. and Samuel, and these three, with James H. Roberts, another brother, and J. O. Langraff, constitute the firm of Roberts Bros., who are engaged in the business of packing canned goods. Samuel H. Roberts and Oliver P. Roberts are also partners in a ship chandlery business, and they are also associated in some real estate business. William H. Roberts and Oliver P. Roberts, both of whom were examined on the hearing of this case, testified that the business of the Old Town Can Company is the individual property of W. H. Roberts, and that the other brothers have no interest in it. The main business office of said company is in the office of Roberts Bros., and Raymond Roberts, a nephew of the four brothers, is the bookkeeper of W. H. Roberts, and appears also to be employed by Roberts Bros. Pursuant to the suggestion and arrangement made by Samuel Roberts, Bramble and his wife went to the office of Mr. Wheatley March 23, 1905, where he met Samuel Roberts. Oliver P. Roberts came in afterwards. Testimony leaves it in doubt whether Samuel remained in one of the adjoining rooms pending the conclusion of the transaction; Oliver P. Roberts testified that he did not see him there. According to Bramble's testimony, the negotiations between him and Oliver P. Roberts were limited to an inquiry as to the valuation of the property which he proposed to mortgage, and as to whether or not there were any liens upon it, and that Roberts, not being entirely satisfied with his state-

ment that there were no such liens, said that he would find out in Cambridge about it, and it appears that Roberts thereupon communicated by telephone with an attorney in Cambridge, and the bill of said attorney subsequently introduced shows a charge for a fee, March 23d, for examining the records as to the property of Bramble, and for the telephone charges, and, apparently as soon as he was satisfied that there were no incumbrances on the property, Roberts gave Bramble his check for $6,500, and the two mortgages were there and then executed, one for $2,500, upon real estate, and the other for $4,000, upon the personal property, machinery, etc., in the canning plant, upon certain horses, mules, and farming implements, and furniture of his house. The two mortgages apparently cover practically all of Bramble's property. As soon as the transaction was complete, Roberts summoned his nephew, Raymond Roberts, to Mr. Wheatley's office, and upon his arrival gave him the mortgages to carry to Cambridge to be recorded. When Raymond Roberts arrived, Bramble turned over to him the check for $6,500 received from Oliver P. Roberts, and the bill of the Old Town Can Company for $6,407.32 was paid and Raymond Roberts gave Bramble a check for the difference between the amount of the bill and the amount of Oliver P. Roberts' check. Oliver P. Roberts testifies that he had no knowledge of Bramble's indebtedness to the Old Town Can Company; that he had no interest in said company, which was the individual property of his brother, W. H.; and that he did not know that his check was to be used in payment of said indebtedness. If this testimony is accepted as absolute verity, it would place the transaction beyond impeachment, for mortgages executed in good faith as security for money actually loaned are not in contravention of the bankrupt act; but evidently the court below did not accept this testimony as true, and the question now before us is whether there is anything in the case which takes it out of the general rule that accepts the judgment of the lower court as to the credibility of witnesses.

The main purpose of the bankrupt act is to secure an equal division of the property of the bankrupt among his creditors, and this purpose has certainly been defeated here if the transaction is allowed to stand, for W. H. Roberts has received payment in full of his indebtedness; practically all of the property of the bankrupt is covered by the mortgages, and the other creditors will get nothing. If the mortgages had been given directly to William H. Roberts, it could not be pretended that there was not an unlawful preference, and a transaction assailed as a preference must be determined by its effect and not by its form. That Bramble was insolvent on March 23, 1905, is clear, for his indebtedness on that date, according to the testimony of his bookkeeper, was something over $23,000. The mortgages covered his entire property, and eight days thereafter he filed his petition in bankruptcy. That William H. Roberts has received a preference is also clear, for his debt has been paid in full, and the purpose and intent to give a preference is properly inferable from the facts proved. The negotiations through which this result was obtained were all made by Samuel Roberts, a brother of the creditor, and a brother of the mortgagee. He it was that impressed upon Bramble that the Old Town Can Company "had to have money," and he it was who told Bramble that he "could give me

a man that would loan me the money," without disclosing the name of the man, and he arranged the meeting in the office of the mortgagee's attorney, where the money was loaned, the mortgages executed, and immediately thereafter, before he left the office of the attorney, the debt due to W. H. Roberts was paid with the check of his brother, Oliver P. Roberts. Courts cannot permit to be done by indirection what the law forbids to be directly done, and, without regard to the form, they consider the purpose and effect of the transaction, however devious the ways by which it is accomplished. The obvious effect of these dealings has been the defeat of the purpose of the bankrupt act. William H. Roberts has received payment of his debt in full; and the other creditors are deprived of their proportionate share of Bramble's property, which that act was designed to secure. This result has been attained by the attempted transfer of property, which in Bramble's insolvent condition he held as in trust for all of his creditors, to a brother of the preferred creditor. It is hardly to be believed that Samuel Roberts, who made the arrangement with his brother Oliver for the loan, did not acquaint him with its purpose. If Oliver did not know, he deliberately shut his eyes and ears to means of knowledge. A side light on the relations of the parties is found in the circumstance that Bramble, since his bankruptcy, has conducted a packing business for Roberts Bros. In re Pease (D. C.) 129 Fed. 446, and cases therein cited, affirmed by the United States Circuit Court of Appeals, Sixth Circuit (no opinion), states the law and principles which seem applicable here.

The judgment of the court below is affirmed.