ALLEN v. McMANNES.

(District Court, W. D. Wisconsin. October 29, 1907.)

No. 186.

1. FRAUDULENT CONVEYANCES—TRANSFER IN FRAUD OF CREDITORS—KNOWL-EDGE OF PURCHASER.

The sale by a retail merchant of his entire stock of goods puts the purchaser on inquiry to learn whether the seller is not in financial difficulty, and casts upon him the burden of proving that he used such means of knowledge as were at hand to ascertain the facts, in order to sustain his title as against creditors of the seller.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 500, 501.]

2. BANKRUPTCY—VOIDABLE PREFERENCE—RECOVERY BY TRUSTEE.

A bankrupt within four months prior to his bankruptcy transferred his stock of goods to a creditor who held a mortgage thereon, which was void as to the bankrupt's creditors, in satisfaction of the debt. The transfer was made in good faith, both parties supposing the mortgage to be valid, but the bankrupt was insolvent at the time, which fact the creditor could have ascertained by reasonable inquiry. Held, that the transfer constituted a voidable preference, and the trustee in bankruptcy was entitled to recover the property or its proceeds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 250–257.]

**3. SAME—SUIT BY TRUSTEE TO AVOID PREFERENCE—AMOUNT RECOVERABLE.**

In a suit by a trustee in bankruptcy to avoid a preferential transfer of property, where the transferee has sold the property to as good advantage as the trustee could probably have done, he should not be held to account for more than the amount received therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 466.]

**4. SAME—EQUITABLE POWERS OF COURT—PROTECTING EQUITIES OF DEFENDANT.**

In a suit by a trustee in a court of bankruptcy to set aside a voidable preference under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1031], the court has the full powers of a court of equity, and may enforce equities of the defendant as against any other creditor who would otherwise be entitled ·to share in the recovery, but such creditors are not represented by the trustee in such sense that they can be excluded from participating in the fund or property recovered equally with other creditors without being given notice and an opportunity to be heard.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 467.]

**5. SAME.**

A bankrupt had made a preferential transfer of his stock of merchandise to his largest creditor in payment of. his debt and the creditor had sold the same. Such stock comprised all of his property, except certain real estate for which he was largely indebted, and which his wife claimed as a homestead and refused to surrender. She also filed a claim against the estate. The creditors to whom the bankrupt owed the purchase price of such homestead had reserved no lien thereon. The bankrupt also owed a note given in part payment for a worthless patent right. *Held*, in a suit brought by the trustee to set aside the transfer, that the equities of the defendant were superior to those of such creditors; that, on accounting for the proceeds of the property received by him after paying the costs and expenses of the bankruptcy proceedings, his own claim was entitled to participate pro rata with those of the remaining creditors in the remainder of the fund.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 531.]

In Equity.

Richmond, Jackman & Swansen and Orton & Osborn, for complainant.

H. C. Martin and Bashford, Aylward & Spensley, for defendant.

SANBORN, District Judge. This is a bill in equity, brought by complainant as trustee in bankruptcy of Lorenzo Clark, to avoid an alleged preference made by the bankrupt on July 31, 1906. On that day the bankrupt and his wife, Bessie Clark, joined in a bill of sale to the defendant, covering a stock of boots and shoes and store fixtures. The bill of sale recited that defendant had and claimed a chattel mortgage on the property, and should take such property in full payment for the debts secured by the chattel mortgage; that the sale was in full for the amount due from Clark to the defendant. It was agreed that the property should be sold by defendant as soon as possible, that he should have private occupancy of the lower part of the building in which the goods were situated, until they were sold, upon payment of a stipulated rent. If the property should bring more than the amount of the debt, the surplus was to belong to the bankrupt. Defendant was to conduct the sale and account for the proceeds. It was further recited that the book accounts belonged to the

bankrupt, but might be paid either to said Clark or defendant, either being authorized to collect and give receipts, but, when collected, to belong to said Clark, so far as necessary to pay any of Clark's merchandise debts. The consideration of the sale was recited to be the sum owed by said Clark to defendant on certain notes secured by the chattel mortgage, amounting to $8,089.56, and that such indebtedness was paid by the sale and transfer. It was alleged in the bill of complaint that at the time of making said bill of sale Clark was insolvent, and made the sale with intent to prefer the defendant and to defraud his other creditors in violation of the bankrupt act, and that the value of the property transferred was $8,000, and that defendant at that time had reason to believe and to know, and did know, that said Clark was insolvent, and that said payment to him was for the purpose of preferring him as a creditor of said Clark. The bill does not contain any general prayer for relief, but only for the issue of a subpœna and to have the defendant answer but not under oath, but it was assumed on hearing that the suit was brought for the purpose of compelling defendant to account for the value of the property sold and to have sale declared invalid as a fraud on the bankrupt act. The answer denies that Clark was insolvent at the time of making the bill of sale, that the defendant knew, or had reason to believe, that Clark was insolvent; denies that he made the transfer with intent to prefer defendant or to defraud other creditors; further denies that defendant had reason to believe or to know, or did know, that said Clark was insolvent and that said payment was for the purpose of preferring him as a creditor; further denies that defendant had reason to believe that Clark was insolvent. The answer admits that the property transferred was worth $8,000 at the cost price, but denies that it was worth that sum for immediate conversion at quick or forced sale. It appears in evidence that in the year 1895 the bankrupt was working for the defendant in his boot and shoe store, and in January of that year defendant sold out the stock of boots and shoes to the bankrupt for $8,966.14, $1,216.14 of which was paid in cash and the balance in notes secured by chattel mortgage. The mortgage was renewed several times; the last renewal being made in January, 1905. There was an understanding between the parties that the mortgagor might sell the property in the ordinary course of business and apply the proceeds to his own use. This understanding rendered the mortgage void as to the creditors of the bankrupt. Other questions are raised as to the validity of the mortgage, but they seem to be immaterial in view of the effect of this understanding. In March, 1901, the bankrupt purchased the store building from the defendant for $4,000. In order to raise the money to pay for the building, the bankrupt was obliged to borrow it, or the greater part of it. The person who lent this money did not take any security upon the store building, but some part of the debt has been paid by the bankrupt. In the latter part of July, 1906, an offer was made by one Gordon to purchase the store building for $4,500 and a portion of the stock of boots and shoes for $3,500. It was contemplated that the $3,500 was to be paid to the defendant on his chattel mortgage debt. This offer was accepted by the bank-

rupt, but he was unable to carry it through, because his wife refused to sign the deed of the store property, on the ground that it was her homestead. When the defendant learned that the sale had fallen through, he immediately demanded that his debt be paid, and it was then proposed by the bankrupt to turn over the stock to him in full payment of his debt. At this time both of the parties supposed that the chattel mortgage was valid, and that the defendant had the right to take the stock and apply it in payment of such indebtedness. Defendant knew that the bankrupt was indebted to other creditors for merchandise covered by the bill of sale, but it appears in evidence that Clark told defendant, and later repeated the same statement in the presence of Mr. H. C. Martin, his attorney, that the indebtedness to other creditors was $1,500, and that he had sufficient book accounts to pay such indebtedness. Defendant took no steps to satisfy himself in respect to the book accounts or the amount of the indebtedness. He was well acquainted with the situation; knew the value of the store property, and the value of the merchandise which he took in satisfaction of his debt. Had he supposed that the transfer was subject to be disputed or set aside by creditors, he would undoubtedly have taken further precautions. By mistake of law, he supposed that his chattel mortgage was valid, and this led him to be less vigilant than he otherwise would have been, but it is entirely clear that he knew practically the whole situation. He knew that Clark had been unable to sell the real estate and merchandise, and he understood that there were merchandise debts, and that Clark was closing out all of his property with which he was doing business. As a matter of fact, Clark was insolvent at the time. The sale was not in the ordinary course of business, and the defendant knew that the property was a homestead; that Clark had borrowed the money to pay for it; that the debt to defendant had been increasing; that Clark had obligated himself to pay for a patent right; that he was indebted to merchandise creditors in the sum of at least $1,500. In fact, the defendant knew pretty much everything that Clark knew about the situation, except the amount of the book accounts, which Clark told the defendant were sufficient to pay his merchandise debts. These book accounts were of very little value, probably not to exceed $200 at that time.

The sale of an entire stock of goods of a retail merchant is a suspicious circumstance per se, naturally calculated to put the purchaser on inquiry. Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489; In re Knopf (D. C.) 146 Fed. 109; Dokken v. Page, 147 Fed. 438, 77 C. C. A. 674. Such a purchase is presumptively questionable, and casts the burden of proof on the purchaser to show that he had no notice of facts or circumstances sufficient to arrest his attention, puts him on inquiry, and requires him to use such means of knowledge as were at hand in order to learn whether the seller is not in financial difficulty, and whether a general statement, such as that the book accounts are sufficient to pay the mercantile creditors, was true. Thomas v. Adelman (D. C.) 136 Fed. 973; English v. Ross (D. C.) 140 Fed. 631; In re Hines (D. C.) 144 Fed. 544; Jackman v. Eau Claire National Bank, 125 Wis. 485, 104 N. W. 98; In re Pease (D. C.) 129 Fed. 448; Roberts v. Johnson, 151 Fed. 567, 81 C. C. A. 47.

Counsel for defendant recognize that the rules just stated are salutary and well settled; but urge that a full inquiry would have disclosed neither the insolvency of the bankrupt nor his intent to prefer. I find from the evidence, however, that investigation would have disclosed Clark's insolvency. Defendant could have found in the store that the mercantile debts were $1,540, and by inquiry could have learned that the note to Mrs. Tyson was $410, the debt for the store building $3,295, and to the bank $300. His own claim was $8,089.56. The total is $13,634.46. Taking the value of the stock at $8,000, the store building at $4,500, the household goods at $200, the amount is $12,700. Defendant could have ascertained by looking at the list of accounts that they were not worth more than $300 or $400 at the outside figure. It may also be said that the stock was hardly worth $8,000 or the store building $4,500. Defendant had recently sold the latter for $4,000. The stock realized only $5,500 at a forced sale; but, taking the property at the extreme highest limit, and also excluding the note given for the patent right, the result is the same, and shows insolvency. The whole situation shows that Clark was in financial difficulty. His wife was claiming a homestead exemption, and refusing to join in a sale of the homestead property for a good price. Defendant took a bill of sale of the stock as a whole, knowing that the homestead creditors were not paid, and not intended to be, also without verifying Clark's statement that the accounts would pay the mercantile creditors. In view of the whole situation, I feel quite clear that the defendant had notice of facts and circumstances disclosing Clark's insolvency and his intent to prefer. From this conclusion a decree setting aside the sale as an unlawful preference should be entered; but the extraordinary circumstances of the case require consideration, so as to determine whether the usual relief following the avoidance of the sale should be administered, or whether the complainant, as trustee representing all the creditors of the bankrupt, including defendant among their number, should be compelled to submit to certain equitable conditions of the relief to which he is entitled, on account of the nature and peculiar circumstances attending some of the claims so represented by him.

Mrs. Clark, the bankrupt's wife, has taken a technical advantage of a liberal exemption law to save a homestead at the expense of her husband's creditors, and at the same time has filed her own claim for $1,158, for money lent her husband from year to year for some 11 years. She claims, and is entitled, to a homestead in the store building purchased by her husband from defendant with borrowed money, $3,295 of which is still unpaid. By virtue of the liberal construction given by the courts of Wisconsin to the homestead exemption law, a business block, part of which is used as the debtor's home, is exempt from process on his debts, and is recognized by the bankrupt law. Clark and his wife, therefore, have saved this building for their homestead out of the wreck of his failure, thus casting the debt contracted to pay for the building upon the personal property of the bankrupt. Thus Mrs. Clark first lessens the assets and increases the claims against the personal property by asserting the homestead right, and then further swells the claims by filing her own; and through the trustee in

this suit asks a decree against defendant for the full amount of his liability. It will be noticed also that it was the act of Mrs. Clark, in refusing to join with the bankrupt in a deed of the homestead which brought on the preferential sale of the stock to defendant, and thus precipitated the bankruptcy. By this act, technically lawful though it was, the sum of $4,500 was prevented from reaching the creditors, and was retained for the benefit of the debtor and his wife. Mrs. Clark is thus permitted to pervert a liberal exemption law by refusing to devote the property to her husband's just debts, allowed to retain a remunerative property in which she is now living and carrying on business, and, in addition, asks the right to prove her claim for $1,158 against the money which defendant is compelled to restore on account of the avoidance of the very sale induced by her act in claiming the homestead, and refusing to devote it to the payment of the debts. Should a court of equity, in setting aside the sale to defendant, compel him to pay back any money for the benefit of Mrs. Clark, or should she be entirely excluded from all right to claim any part of the fund in question?

A similar question arises as to the Huntington and White claims. The Huntington claims amount to $3,295, and are for money lent the bankrupt to pay for the homestead at the time of its purchase from defendant. These claims might have been either secured by mortgage on the property, or by the assertion of vendors' liens within a reasonable time. By neglecting to so secure them their burden is thrown upon the personal property, all of which is now held by defendant as the proceeds of his sale under his preference. By their negligence the Huntingtons have lost their claims on the property which equitably ought to bear the burden. Having two funds applicable to the payment of their claims, the real property and the personal, while other creditors have only one, the Huntingtons negligently permit one fund to escape them, and become absolutely vested in the bankrupt and his wife as a homestead. The Huntington claims, therefore, have no equitable right to compete with other creditors whose claims relate only to the personalty; and defendant as a creditor with a claim for $8,089.56 ought not to be compelled to pay anything toward the liquidation of these claims. The White claim, for $614.63, is part of the consideration for the sale of a worthless patent right or license to the bankrupt by the claimant, who was paid $500 in money in addition to this claim. The proof shows this right to be of no value whatever, and defendant should not be compelled to pay anything towards this claim unless such a result necessarily follows the setting aside of the preference.

The important question, then, is whether the court, as a court of equity, whose power is invoked to set aside a sale invalid both at law and in equity, having found the sale preferential and void, may nevertheless enforce equitable conditions of the relief sought, by permitting defendant to retain such part of the value of the property conveyed to him by the void sale as represents the percentage which the claimants Clark, White, and the Huntingtons would be entitled to. Should the maxim that he who seeks equity must do equity, or submit to have equity done, be held to apply to a case arising under the

bankrupt law in enforcing the special jurisdiction vested in the District Court by the amended act? The provisions of the bankrupt act would not permit any such result as that here suggested. All allowed claims must be paid pro rata, unless made privileged by the act itself. But this, instead of preventing the application of equitable conditions to the relief sought, is the very situation which usually calls for such an application. It is the ordinary case of a legal rule, adopted as properly applicable to the great majority of cases but which sometimes operates inequitably, like the common-law rule vesting the wife's personalty in the husband, but protecting it from the claims of his creditors, except on condition of making a suitable provision for the wife. By amendment to the bankrupt law, the District Court is given jurisdiction to set aside preferences at the suit of the trustee, and it is urged that the power of the court is limited by this provision to the mere avoidance of the preference, and decreeing that the trustee recover the property or its value. No such limitation is expressly imposed by the law, and the question whether any such would be valid was the subject of thorough and prolonged discussion in the Senate of the United States in 1906, in connection with a proposed provision of the railway rate bill, attempting to limit the federal courts in the matter of granting injunctions in respect to rates and other matters. That discussion resulted in the defeat of the amendment, and tended strongly to the conclusion that, while the Congress may define the subjects which shall come within the jurisdiction of the lower federal courts, yet, having once given the jurisdiction, it cannot withhold any part of the judicial power pertaining to the court to which such jurisdiction is given. 40 Cong. Rec. pt. 5, pp. 4115–4122, 4156–4164. The equitable rule as to imposing conditions of relief is thus stated by Mr. Pomeroy:

"It may be regarded as a universal rule governing the court of equity in the administration of its remedies that, whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant growing out of, or intimately connected with, the subject of the controversy in question, will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to acknowledge, admit, provide for, secure, or allow whatever equitable rights (if any) the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights. This principle is not confined to any particular kind of equitable rights and remedies, but pervades the entire equity jurisprudence, so far as it is concerned with the administration of equitable remedies." 1 Pom. Eq. § 388.

The principle has been applied in a great variety of cases. It is applicable, whenever necessary, in order to promote justice. Mutual Life Insurance Co. v. Brown, 30 N. J. Eq. 193. Perhaps the most striking example was the protection of the wife's equity against her husband's creditors. At law the personal property of a married woman vested in her husband, but courts of equity would not permit the husband's creditors to take it for his debts, except on condition of making adequate provision for the wife. 1 Pom. Eq. § 389. Another illustration is found in Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501, where a vendee in a land contract made when the price was

payable in gold sought specific performance upon a tender of depreciated legal tender notes. He was allowed relief only on the payment of the purchase money in gold. Many statutes are merely expressions of the rule, like those in Wisconsin, compelling landowners to pay taxes as a condition of setting aside void tax deeds. In Walling v. Aiken, 1 McMul. Eq. (S. C.) 1, a mortgagor was compelled, as a condition of redeeming from a mortgage, to pay other unsecured debts owing to the mortgagee. This was undoubtedly an extreme application of the rule. It seems to me that this is a proper case for the application of the equitable rule in question. The trustee represents all the creditors, including defendant in his capacity as a creditor. He brings suit in their right, and theirs alone, although the right is wholly statutory. He is here in court as a complainant, seeking to enforce their equitable right to have a preference which injured them avoided, and the proceeds restored to a fund against which they may claim. He represents Mrs. Clark, the Huntingtons, and White, as well as all other creditors, and seeks to enforce their rights, in addition to those of officers of the court, himself, and his attorneys, for commissions, fees, and expenses. Mrs. Clark, through the trustee, is here asking the court to enable her to force defendant to restore money to or for her when, but for her act in seizing the opportunity to gain a homestead without paying for it defendant would not have taken the transfer, or become involved in the liability, vexation, and expense of this litigation. If Mrs. Clark were herself a complainant in person, is it conceivable that a court of equity would give her any such relief? And, if not, it should equally be withheld in a case brought to enforce her rights. Though the case is not as strong in respect to the White and Huntington claims, yet I think like conditions should be imposed in respect to them also. While the trustee represents all the creditors, they are not parties to this suit, and will only be conditionally bound by the decree, as hereafter stated.

As to the measure of damages: Defendant closed out a large part of the property by a quick sale and the balance in bulk. He is an experienced boot and shoe dealer. The expenses of the sale were exceedingly low. The evidence shows that he got as much or more than the trustee could have realized from the same property. Under the rule laid down in Clements v. Moore, 6 Wall. 299, 18 L. Ed. 786, and Wall v. Cox, 101 Fed. 403, 41 C. C. A. 408, the liability of defendant should not exceed the net proceeds he received, or $5,551.31, with the costs of this suit. It appears by the proof that there are no other assets besides this liability. If the sale is set aside, the defendant would then be entitled to file his claim for $8,089.56. Excluding the Huntington, Clark, and White claims, aggregating $5,067.63, the total claims filed are $2,245.63. Not including defendant's debt, the expenses of the bankruptcy proceedings, including fees of the clerk, referee, trustee, and stenographer, and the compensation of the trustee's attorneys, should be made payable out of the amount due from defendant, including all other assets of the estate, which the proof shows to be merely nominal in amount. Defendant should be decreed to pay these expenses, less the amount realized from other

assets, and, in addition, such proportion of the balance as the claims other than the Clark, Huntington, and White claims bear to the total claims, excluding those aforesaid, and including that of defendant.

For the purpose of having a final decree drawn the expenses aforesaid have been ascertained, so that the trustee will have no duty except to disburse the money. Such expenses are as follows:

| | |
|---|---:|
| Disbursements of attorneys in the bankruptcy, and in this action.....$ | 119 34 |
| Commissions of the trustee........................................... | 151 02 |
| Fees of the referee.................................................. | 80 01 |
| Fees of attorneys for trustee in this action and the bankruptcy...... | 1,000 00 |
| Stenographer's per diem and fees for transcript under order to preserve testimony, and for copy to complainant's solicitors........ | 111 63 |
| | $1,472 00 |

The expenses and fees will be fixed accordingly in the final decree.

In order to ascertain the amount to be paid to the trustee by the defendant, the total amount of claims is to be ascertained, excluding the Clark, Huntington, and White claims. Such amount is $10,334.59. The amount for which defendant is liable is $5,551.31. Out of this he should first pay the expenses, $1,472, leaving the sum of $4,078.31. This should be divided by the trustee ratably between defendant, considered as a creditor, and all other creditors who have filed claims, except Mrs. Clark, the Huntingtons, and White. In other words, the sum of $4,078.31 is to be ratably divided between creditors representing claims for $10,334.59, giving a dividend to each of 39.46 per cent. Defendant, having a claim of $8,089.56, will retain $3,-192.16, and the other creditors, with claims for $2,245.63, will receive $886.15. Defendant will also be liable for costs which will be taxed by the clerk without including any solicitors' fees.

A further question remains to be considered, of the effect of a decree entered in conformity with this opinion upon those creditors who are denied the right to share in the fund. Mrs. Clark, White, and the Huntingtons are to be excluded from participation in the fund realized from the suit, and which constitutes all the assets of the bankrupt estate. Can they be so excluded without some additional hearing? No one can be bound by a decree without his consent without his day in court. There must be a hearing, in which he may take part, or else an opportunity to be heard, of which he does not avail himself. This is one of the fundamentals, and no other rule could be tolerated for a moment. He need not be a party on the record, but at some point in the proceedings he must have notice, and the means to appear and submit his right or interest. "The decree must be without prejudice to the right of those who are not made parties, and who do not come in before the decree." Gray, J., McArthur v. Scott, 113 U. S. 395, 5 Sup. Ct. 670, 28 L. Ed. 1015. "It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either entirely or constructively before it." Lamar, J., Gregory v. Stetson, 133 U. S. 586, 10 Sup. Ct. 424, 33 L. Ed. 792. In this case that point has not yet been reached. Those four creditors are, indeed, parties in some sense represented by the trustee. He brings suit for them, to avoid a preference which

stands in the way of their claims. For this purpose, beneficial to them, he is their representative; but his agency goes no further. He is in court for the sole purpose of having a preference avoided, not to have decided the question whether their claims are to be allowed participation. They are represented parties, but have no power to control the proceedings or appear by their own attorney. They are not liable for costs, and have no right of appeal; that being vested solely in the trustee. A represented party is not bound by a hostile proceeding, unless he has had an opportunity to be heard, and neglects to accept it. Pomeroy, Code Rem. § 296. The term "party" in the sense of one who is concluded by a judgment includes all those directly interested in the subject-matter, and who had the right to control or defend the proceedings, examine and cross-examine witnesses, and appeal from the judgment. This was the case of an injury on a highway, where the person responsible for the defect and liable over to the city, and who had actual but not express notice of the suit, was held concluded by the judgment. Robbins v. Chicago, 4 Wall. 657, 672, 18 L. Ed. 427. He need not be named on the record. Strayer v. Johnson, 110 Pa. 21, 1 Atl. 222; Theller v. Hershey (C. C.) 89 Fed. 575; Bachelder v. Brown, 47 Mich. 366, 11 N. W. 200; U. S. v. Beebe, 127 U. S. 344, 8 Sup. Ct. 1083, 32 L. Ed. 121. The trustee being expressly authorized to bring suit to set aside preferences, the creditors, whose right the trustee represents, are thus made parties, so far as they are parties, against their will, by force of the statute. McCann v. Louisville (Ky.) 63 S. W. 446; Tobin v. Portland Mills Co., 41 Or. 269, 68 Pac. 743, 1108.

The decree should therefore provide that the four creditors be given a reasonable time to intervene, become full parties, and show cause why they should not be excluded from any share in the fund; and, in default of such intervention within a time to be fixed, the decree to become absolute.