ROGERS v. FIDELITY SAVINGS BANK & LOAN CO. et al.

(District Court, W. D. Arkansas, Ft. Smith Division.    September 22, 1909.)

1. BANKRUPTCY (§ 159*)—PREFERENCES.

   Whether a transaction is a preference must be determined by its effect to prefer the creditor receiving the benefit thereof, and not by its form.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 159.*]

2. BANKRUPTCY (§ 164*)—PREFERENCES—PAYMENT.

   A bankrupt in October, 1904, opened a store at B., and began doing business with defendant bank. His first deposit was made October 11, 1904, and he continued making deposits until December 24th following, when his overdrafts at the bank aggregated $2,059. On December 24th the bank refused to pay any more of his checks until deposits had been made to cover them, and several checks were protested for nonpayment. On December 31st the bankrupt sold out his business at B., the purchaser agreeing, as a part of the consideration, to pay the debt to the bank, which he subsequently did; an adjudication in bankruptcy being made February 16, 1905. *Held*, that the transaction operated to prefer the bank, and was therefore a voidable preference.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

3. LIMITATION OF ACTIONS (§ 5*)—STATE STATUTE—APPLICATION.

   Kirby's Dig. Ark. § 5083, providing that if an action shall be commenced, and plaintiff suffer a nonsuit, he may commence a new action within a year after such nonsuit was suffered, etc., was not intended to and did not purport to shorten the general statute of limitations, but was a saving clause to prevent a bar that had already run when the nonsuit was suffered.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 13–15; Dec. Dig. § 5.*]

Action by J. W. Rogers, as trustee in bankruptcy of A. C. Reifel, against the Fidelity Savings Bank & Loan Company and another to recover an alleged preference. Judgment for plaintiff as against the Fidelity Savings Bank & Loan Company alone.

In this case the jury was waived, and the case submitted to the court, sitting as a jury. The court finds the following facts: A. C. Reifel prior and during the year 1904 was a merchant doing business at the town of Rogers, in Benton county, Ark. Early in October, 1904, he also opened a store at Bentonville, in the same county. On January 5, 1905, his creditors filed an involuntary petition in bankruptcy against him in this court, and he was on the 16th of February, 1905, adjudged a bankrupt, and plaintiff, J. W. Rogers, was elected trustee in bankruptcy of his estate, and duly qualified as such, and is now, and has been ever since February 5, 1905, such trustee; that the defendant bank is a corporation organized under the laws of Arkansas, and has been since October, 1904, and is now doing a banking business at Bentonville, Ark.;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the bankrupt early in October, 1904, opened a store at Bentonville, and continued the business at Rogers, the two stores being conducted separately, the store at Rogers doing business at Felker's Bank, at Rogers, and, as soon as he opened the store at Bentonville, he opened an account for that store with the defendant bank. His first deposit at defendant's bank was October 11, 1904, and he continued making deposits from sales of the Bentonville stock until December 24, 1904, a little over a month and a half, when his overdrafts at the defendant's bank aggregated $2,059, which was used in payment of goods which went into the Bentonville store. From October 11, 1904, to October 19, 1904, the bankrupt's deposits exceeded his drafts, and the first overdraft occurred October 19, 1904, and, after that, his overdrafts exceeded his deposits until December 24, 1904. About the middle of December, 1904, defendant Burks, who was the president and a member of the board of directors of defendant bank during all the time herein referred to, had a conversation with the cashier of the Felker Bank at Rogers, in which the cashier of the Felker Bank informed him that the bank at Rogers had transferred its claims against Reifel to a Mrs. Jackman, at Rogers, and that Burks had better not let Reifel get in debt to him too deep. A week or ten days later, on December 24th, the defendant bank refused to pay a check of Reifel's for $15 until a deposit was made to cover it. About December 24th Reifel drew on defendant's bank a draft for $600, and defendant's bank refused to pay it, and returned it. On December 31, 1904, J. S. Nelson & Son, a shoe company, sent for collection through the First National Bank, of Bentonville, a check drawn by Reifel for $300. This check the defendant bank refused to pay, and it was protested. Defendant bank extended no credit to Reifel after December 24, 1904. On December 31, 1904, the very day the said check of Nelson & Son, shoe company, for $300 was protested, Reifel sold out his Bentonville store to George P. Jackson, and the same day the following writings were executed:

"Whereas, A. O. Reifel, at even date herewith and for a valuable and sufficient consideration sold and delivered to Geo. P. Jackson, a general stock of merchandise, fixtures and furniture owned by the said Reifel, and, being and situate in the brick business block in Bentonville, Arkansas, known as the Haney block, at and for the invoice price of seventy cents on the dollar of the original cost thereof, and

"Whereas, by the terms of the said sale and the agreement of the said Jackson and Reifel, out of the proceeds of said sale, the said Jackson was to apply and pay to W. A. Burks for said Reifel the sum of two thousand and fifty-nine ($2,059.00) dollars, and the remainder and balance of such proceeds when ascertained, to be paid by said Jackson to W. R. Felker, and,

"Whereas, in consideration of the payment to W. A. Burks by said Jackson, the sum of $2,059.00.

"Now, therefore, This evidences that the said W. A. Burks do by these presents, promise and agree with the said Geo. P. Jackson, his heirs and administrators to warrant and defend the title to said stock of merchandise to the extent of the value of said sum of said $2,059.00 and further to hold, keep and indemnify the said Jackson and administrators against all claims that may be legally asserted against said stock of merchandise to the extent and amount of said sum of said $2,059.00 so received by me for the faithful and apt performance of the foregoing obligation and indemnity, we bind ourselves, our heirs and legal representatives.

"Witness our hands this the 31st day of December, 1904. Executed in duplicate.                                        W. A. Burks.
                                                        "————————"

"This evidences that Geo. P. Jackson hereby fixes and recognizes his liability to W. A. Burks in the sum of $2,059.00 for the purposes and consideration set forth in the obligation on the reverse side hereof, and to be due and payable within 60 days from date hereof without interest, and in such installments as the said Jackson may elect, provided, however, he may hold and retain said sum of $2,059.00 or so much thereof as may be necessary to fully indemnify him as provided in the obligation on the reverse side hereof, unless the said Burks shall elect to execute the obligation on the reverse side

hereof with satisfactory security to said Jackson, and thereupon said sum of $2,059.00 shall be paid over to the said Burks at any time after the expiration of 60 days from this date.

"Given under our hands this the 31st day of Dec., 1904.

"W. A. Burks.<br>"G. P. Jackson."

Copied from reverse side of original agreement:

"Received $559.00 payment on the within agreement this 21st day of Jany. 1905.

"Recd. $500.00 this Jan. 31st, 1905.

"Recd. $500.00 this Feb. 21st, 1905."

The Bentonville store at the time the sale to Jackson occurred and the foregoing instruments were executed had about $6,000 of merchandise, and had very little indebtedness except to the defendant bank. In making the sale to Jackson it was understood between Reifel and Jackson (and of this the defendant was advised) that the sale was not for cash, but that Jackson should assume (with defendant bank's consent) the overdraft of $2,059, and to release Reifel from the same, and carry out the agreement contained in the writings hereinbefore set forth. As it was not convenient to get the bank directors together in order to carry out the defendant bank's part of the agreement, defendant Burks, its president, did it in his own name, but acted for the bank, without the knowledge of the other members of the board of directors. The sale to Jackson was made, or agreed, at 70 cents on the dollar. The stock was part new, and part had been on hand for some time. When Jackson executed the obligation to pay the bank $2,059, Burks credited Reifel's account with the bank with that sum, and Jackson's note for that amount was in due time fully paid by Jackson as per agreement, and no one else paid anything on that account. Prior to the proceeding in bankruptcy Reifel had a wide reputation as a successful business man and merchant. The proceeds of the sale of the Bentonville stock was paid to the defendant bank and to the Felker Bank at Rogers. Defendant Burks did not know just how much Reifel owed at Rogers and Bentonville when he sold to Jackson. At the time Reifel sold to Jackson he was insolvent, but the defendant did not know it until after Jackson had paid the debt to the bank. The bankrupt's estate paid about 27½ cents on the dollar, and is still in process of administration, not having been closed.

2. The court further finds that J. W. Rogers, as trustee as aforesaid, commenced a suit in the circuit court of Benton county, Ark., on the 9th of March, 1905, against the defendant for this same debt, and on the 3d of April, 1907, the same was dismissed without prejudice, and more than a year elapsed thereafter before this suit was commenced.

W. A. Dickson, for plaintiff.

J. A. Rice, for defendants.

ROGERS, District Judge (after stating the facts as above). On this finding of facts the court declares the law in favor of the plaintiff, as against the defendant bank; and that the cause of action is not barred by the statute of limitations. This court finds that Reifel was insolvent when he sold to Jackson. In the light of the facts, no other conclusion could be reached than to hold that Reifel at the time of the sale knew that he was insolvent. If he knew it, providing, as he did, for the full payment of the defendant bank, he knew he could not provide for the full payment of his other creditors. Therefore, the payment of the defendant bank was intended by him as a preference. It was not necessary that the defendant bank or Burks should have known that the payment was intended by Reifel as a preference, or even should have believed it was so intended. It was sufficient if Burks acted for the bank in caring for its claim against Reifel, and

172 F.—47

came into possession of facts as to the condition of Reifel's business sufficient to produce in the mind of an ordinarily prudent man reasonable cause to believe that Reifel was insolvent, and that the provision for the payment of his debt was intended as a preference. It would be profitless to discuss this evidence. I am unable, after the most careful consideration of all the evidence, to get the consent of my mind that the facts and the transaction in the possession of the defendant Burks at the time the sale was made from Reifel to Jackson were not ample to put any ordinarily prudent man upon inquiry as to the solvency of Reifel and of his intention in making the sale to Jackson; and the proper inquiry could not have failed to have resulted in the disclosure of Reifel's condition and purpose. The transaction in this case must be determined by its effect, and not by its form. The effect was to prefer the bank. The following cases can be read with profit on these points: Roberts v. Johnson, 151 Fed. 567, 81 C. C. A. 47, 18 Am. Bankr. R. 132; In re Coffey, 19 Am. Bankr. R. 149; In re Hines (D. C.) 144 Fed. 543, 16 Am. Bankr. R. 495; Suffel v. McCartney Nat. Bank, 127 Wis. 208, 106 N. W. 837, 115 Am. St. Rep. 1004, 16 Am. Bankr. R. 259; In re Andrews, 144 Fed. 922, 75 C. C. A. 562, 16 Am. Bankr. R. 387; Parker v. Black (D. C.) 143 Fed. 560, 16 Am. Bankr. R. 202; In re Eggert, 102 Fed. 735, 43 C. C. A. 1, 4 Am. Bankr. R. 449; In re Virginia Hardwood Mfg. Co. (D. C.) 139 Fed. 209, 15 Am. Bankr. R. 135 (decided by this court, and cases there cited); In re Pfaffinger (D. C.) 154 Fed. 523, 18 Am. Bankr. R. 807, which case contains a very clear discussion, and cites many cases in point.

As to the statute of limitations, section 5083, Kirby's Dig. Ark., was not intended and does not purport to shorten the general statute of limitations. It was intended as a saving clause to prevent a bar where it had already run when the nonsuit was suffered. Karnes v. American Fire Ins. Co., 144 Mo. 413, 46 S. W. 166; Long v. Long, 141 Mo. 352, 44 S. W. 341; Coffin v. Cottle, 16 Pick. (Mass.) 383. This suit is therefore not barred either under the bankrupt law or the statute of limitations of the state. It is not necessary to decide what statute applies to this character of case.

The finding of the court is that the plaintiff recover from the defendant bank $2,059 and 6 per cent. interest from the 9th of March, 1905, the date the original suit was brought, amounting in the aggregate to $2,619.39, with costs; and the court finds the issues in favor of the defendant Burks.