## Blackmore *against* Gregg.

A vendee stands in privity to his vendor only in respect to acts suffered or done before the title was conveyed.

As between parties and privies, a judgment is conclusive only of those things which were directly adjudicated.

A brought an action of ejectment against B and recovered a verdict and judgment, but did not take out execution upon it, but subsequently brought another ejectment against B for the same land, upon the trial of which B set up as a defence, that A had, after suit brought, and before trial, conveyed the land to C, in consequence of which a verdict and judgment were rendered in favour of A for damages and costs only. Upon these facts, in an ejectment by C against B, founded on his title obtained from A, it was held, that there was not such a privity between C and B, as made the two prior verdicts and judgments conclusive of the title.

ERROR to the district court of *Allegheny* county.

This was an action of ejectment by Oliver O. Gregg and Christopher Ihmsen against Thomas Blackmore and Jacob Poth, for the undivided third part of a tract of land in St. Clair township, containing 30 acres more or less. The plaintiffs claimed as alienees of Gabriel Swazey and wife; the defendants, under the heirs of Oliver Ormsby, deceased.

The plaintiffs gave in evidence, title from the Penns to Dr Bedford, and from him to Mrs Jane Ormsby; and the death of Mrs Ormsby; and evidence to prove the wife of Gabriel Swazey to be the only daughter of John Ormsby, and one of the four surviving children of Mrs Jane Ormsby; and of the death of Mrs Jane Ormsby in 1790; and of her son John in 1795, intestate; and the conveyance from Swazey and wife to the plaintiffs. They then gave in evidence the following records:—

Richard Smith, a citizen of Mississippi, lessee of Gabriel Swazey

[Blackmore v. Gregg.]

and Wife *v.* William Stiles, a citizen of Pennsylvania, with notice to George Jackson and others, tenants in possession.

This was an ejectment in the district court of the United States, for the same land in which, on the 7th of October 1835, a verdict and judgment were rendered for the plaintiff, and a writ of error to the supreme court of the United States, sued out by the defendants, but which was never prosecuted.

Gabriel Swazey and Wife *v.* Martin Snyder and others, tenants in possession.

This was an ejectment in the district court of Allegheny county, brought in 1837 for the same land. Upon the trial, the plaintiff gave in evidence a deed from the Penns to Dr Bedford, and from him to Jane Ormsby: her death and the pedigree of Mrs Swazey, as the daughter of John Ormsby, Jun.

The defendants then gave in evidence a deed from Gabriel Swazey and Wife to Oliver O. Gregg and Christian Ihmsen, for the land in controversy, dated the 10th of May 1838, being after suit brought and before the trial. And also, a mortgage from Oliver O. Gregg and Christian Ihmsen to Swazey and wife, on said land, to secure the payment of the purchase-money: when the bill of exceptions proceeded as follows:—" Defendant's counsel now suggest to the court, that having shown that plaintiffs have conveyed their title since this suit was brought, they cannot claim to recover the possession, and propose to submit to have a verdict entered for plaintiffs for costs and nominal damages; plaintiffs' counsel admitting their deed of May 10, 1838, but claiming that the legal title was re-conveyed to them by the mortgage of the same date, and executed at the same time with said deed, insist that the court instruct the jury to find a general verdict for plaintiffs, for the one undivided fourth part of the land in dispute."

The court refused to instruct the jury as requested by plaintiffs' counsel, but instructed them to find for the plaintiffs a verdict for nominal damages and costs only.

The jury found a verdict for plaintiffs, six cents damages and six cents costs, and that the plaintiffs have conveyed their title since the institution of this suit as per deed of 10th May, 1838, and mortgage of same date. Upon this verdict a judgment was rendered.

After this evidence had been given in this cause, the court intimated their opinion, that the two verdicts and judgments were conclusive, and that the counsel had better permit the cause to go off on this point alone; which was acquiesced in, and the court thus instructed the jury:—

" We cannot shut our eyes to the fact that the policy, aim, and intent of the act of the 11th of April, 1807, is this:—That, where two verdicts and judgments have been rendered on the same title to land, between the same parties or their privies, they shall

be estopped from again disputing the same matters.   ' *Interest rei-publicæ ut sit finis litium.*'

" Now, what is the admitted state of the facts in this case?   Gabriel Swazey and wife, claiming as tenants-in-common with the heirs of Oliver Ormsby, bring their ejectment in the district court of the United States against the tenants of Oliver Ormsby's heirs. This action is tried on its merits—after a full and fair hearing, a verdict and judgment are rendered for the plaintiffs.

" The defendants take out a writ of error, and file it, but never take up the record.   The plaintiffs being thus baffled in obtaining possession, bring another ejectment in this court against the tenants of the heirs of Oliver Ormsby.   They appear and take defence, (without putting their names on record,) and at the trial set up as a defence that the plaintiffs (Swazey and wife) have sold their title (since suit brought) to the present plaintiffs; a verdict and judgment, therefore, are again obtained against the defendants, on the same title and under the same testimony, and the defendants retain the possession by alleging the fact that the title of Swazey and wife is vested in plaintiffs; and yet in this suit they insist upon again trying the same facts as to the heirship of Swazey's wife, a third time, and denying the title of plaintiffs, which they asserted in the last trial.

" I am of opinion, therefore, as the title to this land has been twice fully tried between these parties, and their privies, and two verdicts and judgments rendered on the merits of their respective titles, that, according to the true spirit and meaning of this act of assembly, the defendants should be concluded from again setting up the same matters of defence, and that you should accordingly find for plaintiffs."

This opinion was the subject of the assignment of error.

*Dunlop*, for plaintiff in error, cited *Story's Eq.* 152, 3; 2 *Eq. Cas. Ab.* 171–243; 1 *Watts* 342; 1 *Whart.* 514; 14 *Serg. & Rawle* 301; 5 *Watts* 272–425; 11 *Serg. & Rawle* 392.

*M'Candless* and *Forward*, for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—The bar of two verdicts in ejectment, is a statutory estoppel; and estoppels have effect only between parties and privies.   The statute does not, indeed, expressly require the two verdicts to have been betwixt those who stood in that relation to the parties to be affected; but it would be monstrous to doubt that such was the intent.   Statutes are to be interpreted as near as may be to the principles of the common law, especially in respect to matters which it may have been thought unnecessary to specify in detail; and it would have evinced a ridiculous attention to minutiæ

[Blackmore v. Gregg.]

had it been specially provided that a title should be impaired or affected by a verdict between one of the parties and a stranger. Now, though grantors and grantees are privies in estate so far as regards acts suffered or done at the time of the conveyance, it is fallacious to pretend they are such as to acts suffered or done afterwards. Every vendee takes the title, subject to the consequences of his predecessor's acts during his seisin; but that it is not to be affected by a verdict against him, or by any act done by him afterwards, seems almost too clear for argument. On the principle of privity as to future acts, a vendor might charge the land in the hands of the vendee by suffering a judgment in debt; and if it be conceded, as it must, that he may not, I am unable to understand how he may burthen it with the consequences of an unsuccessful verdict, in an ejectment prosecuted at will for damages and costs. Ought not the remote, as well as the proximate, consequences of such an action to be exclusively at his risk? What seems conclusive of the affirmative, is that if the vendor's action on the title were treated as the action also of the vendee, it would preclude the vendee from suing for the possession till it were determined; for its pendency would be a sure ground to stay proceedings in an action brought by him; or, now that the parties are the same, the vendor's action might, perhaps, be pleaded in abatement of it. But as the vendee could derive no advantage from a verdict which would not serve to put him in possession, it would be unjust to make him wait the vendor's turn, and perhaps till the statute of limitations had closed upon the title—a consequence which no recovery of damages by the vendor could postpone or avoid. Yet the court would be bound to stay proceedings or entertain a plea in abatement if the vendor and vendee were deemed to be embarked in the same bottom; otherwise, as a verdict against the one might bar the other, there would be a scuffle betwixt them for priority of trial. But if the court, in the exercise of its judicial discretion, should refuse to stay proceedings, it could be justified only on the principle, that the vendor's action is not the action of the vendee: a principle that would make short work with the argument; for it would bring death to it to admit that they do not constitute one party. I take it then to be clear, that the present defendants would not have been entitled to count the verdict as a point, in the game with the plaintiffs, had it been in their favour. Again. What is an ejectment pending after the plaintiff has parted with his title? It is a proceeding which has shrunk, in substance, into what the primitive ejectment was in form—an action of trespass to recover damages and costs for an ouster, in which the title is tried, in subservience of the end, only *incidentally.* Now it was ruled in the Duchess of Kingston's case, 11 *St. Tr.* 261, and has been held for an elementary principle ever since, that the judgment of a court, even of exclusive jurisdiction, is inconclusive of a matter thus brought into question; and it surely was not the purpose of the legislature to

[Blackmore v. Gregg.]

give conclusive effect to two verdicts where a single one would not have had it in an ejectment, stripped of the fiction which afterwards deprived it of the conclusive qualities of a recovery, in a writ of entry or a writ of right.  In its origin, ejectment was a simple action of trespass, by which neither possession nor compensation for *mesne* profits was demanded; and it consequently might have been brought when the title had been conveyed.  Indeed, as damages for the supposed ouster are held to be a substantive and distinct cause of action at this day, I see not why an ejectment might not be brought for it still; nor, if it were to have the incidental consequences of an action to recover the possession, do I see why it might not be repeated, *toties quoties*, till it had undone the title in the vendee's hands, though it were free from defect when he purchased it.  If a single verdict would not be conclusive against the vendee, it would not be conclusive against the vendor.

It is idle to say the vendor is allowed to prosecute his pending ejectment, only for the costs already incurred in it.  There is no recovery of costs in any case independent of a substantively and distinctly existing cause of action; for it is the recovery of damages which, under the statute of Gloucester, entitles a plaintiff to costs.  A vendor who has conveyed after action brought, could claim to go for costs, *per se*, with no better grace than could a plaintiff who had endorsed his negotiable note after action brought on it, and thus attempted to subject the maker to the costs of repeated actions.  It is necessarily for damages suffered from the ouster, that such a vendor goes.  On the hypothesis of the argument then, he might repeat his action till he had drawn down upon the title two adverse verdicts and judgments in the hands of the vendee.  If it be said that the vendee takes the land voluntarily, and therefore subject to the risk of that, what would be said of a purchaser under his own judgment who takes it to protect his lien?  Under the primitive form of the action, it would have shocked the general sense to pretend, that his debtor still retained a power to affect the title by an action on it.  And in what respect has the vendee's ownership been jeoparded by the form devised to let in a recovery of the land?  Take it that a defendant in ejectment had set up, in bar of all but damages, the plaintiff's conveyance to a third person, which however was determined to be a forgery—it would not be pretended, that the verdict in such an action, might be admitted as evidence in an action by the vendee against the vendor.  It would be decisive of its incompetency, that the vendee's title had been repudiated in an action to which he was neither party nor privy, and in which he could not have been received to produce proofs or cross-examine.  Thus it stood at the enactment of the statute in 1807; and is it to be supposed, that the common law principle of privity was intended to be changed by it, or that two verdicts should be conclusive of matters adjudicated incidentally, as the title is where the land itself is not demanded, but damages for a trespass.

[Blackmore v. Gregg.]

done to it? In abolishing the fiction which alone had prevented the verdict from being conclusive, the legislature did not choose entirely to restore the conclusiveness of the judgment under the original form of the action; and it certainly was not intended to give a wider sweep to two verdicts, than had been allowed to one: for the power to bar the title by two, was not in furtherance of the common law principle of conclusiveness, but in restraint of it. By the interpretation pressed upon us, the vendee's title might be destroyed without his participation, by a single verdict in an action for damages, prosecuted after failure in an action for the possession. That injustice might doubtless be done, did not the common law principles already invoked, come in to mitigate the rigour of a literal construction, by declaring that a vendee stands in privity to his vendor only in respect to acts suffered or done before the title was conveyed; and by declaring also that between even parties and privies, a judgment is conclusive only of those things which were directly adjudicated. If the vendee's land were affected by an unsuccessful verdict in the vendor's ejectment, I know not why, it might not as well be bound by a judgment in debt against him, pending also at the time of the conveyance. Such a judgment ought to go as far to bind the land, as an adverse verdict in ejectment ought to go to affect the cause of action. Here, the attempt is to make it affect more than the cause of action, by extending its effect from the damages which were sought to be recovered, to the land which was not. Surely the vendee is not to be prejudiced by the result of an enterprize attempted by the vendor for his peculiar benefit; for what matters it that his title to damages, was identical with the vendee's title to the land? Though springing from a common root, the causes of action afforded by it, are different and distinct. The rule perhaps is universal, that he who stands not in privity, and has neither day in court nor right to be made a party, is not to be prejudiced by the judgment; and it will not be disputed that he who could not have been prejudiced by it shall not have advantage from it. The principle is text law. And there was no design to change it; for though a verdict in an ejectment prosecuted only for damages, may be within the letter of the enactment, it surely never was intended to affect the title of one who had no agency in producing it. The case in view was the ordinary one—that of a title tried in a contest for the possession and made a subject of direct adjudication—for had the occurrence of a case like the present been foreseen, it would doubtless have been excepted; and we but carry out the spirit of the statute in making it an exception by implication.

Judgment reversed and a *venire de novo* awarded.