## Strayer to use of Keller *versus* Johnson et al.

110  21
164  119

1. A purchaser at a treasurer's sale of unseated land is in privity to the title, if any, that is divested by the sale and passes to him; hence he is bound by concurrent verdicts and judgments in prior actions of eject-ment, to which his predecessors in title were parties, as to the location and title of the land in question.

2. In an action of trespass brought by the purchaser of land at treas-urer's sale, the records of actions of ejectment to which the plaintiffs' predecessors in title were parties, are admissible in evidence, and two such prior concurrent verdicts and judgments in ejectment fixing the location of the land on which the trespass is alleged to have been com-mitted, are conclusive on the plaintiff.

April 27th, 1885. Before MERCUR, C. J., GORDON, PAX-SON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J. absent.

ERROR to the Court of Common Pleas of *Clinton county:* Of July Term 1884, No. 44.

Trespass quare clausum fregit, by A. H. Strayer to use of Peter W. Keller against F. S. Johnson, Isaac Shaffer and J. B. Powers, to recover statutory damages for cutting and removing timber on a tract of land in Bald Eagle township. Plea, not guilty, and *liberum tenementum.*

On the trial, before WILLIAMS, P. J., the plaintiff claimed title to the tract in question under a treasurer's sale thereof to him as unseated land, in the warrantee name of Charles Carskadden, for taxes assessed for the years 1874 and 1875; and showed title in Charles Carskadden by warrant, survey and patent to him in October, 1859, for 410 a. 4 p. and allowance.

Defendants claimed that the Carskadden warrant covered land which was included in an old warrant of 1794 to Jane Nelson; they deduced title in themselves to the Nelson tract, and proved that taxes for 1874 and 1875 had been paid thereon.

They further offered in evidence the records of certain actions of ejectment, wherein the location of the Carskadden warrant on the land covered by the Jane Nelson tract was the question at issue, in which actions the plaintiff's predecessors in title were defendants, and in which actions successive verdicts and judgments were had in favor of the plaintiffs. These records were admitted against the plaintiff's objection and exception.

Plaintiff, in rebuttal, offered to prove by surveyors that the Jane Nelson survey was not located on the ground so as to

include any portion of the land embraced in the Charles Carskadden survey, but entirely north of it.

Objected to.

The court sustained the objection and held as follows;—

(1). The Carskaddens, if the plaintiffs in this case, would be concluded by the three concurrent verdicts against them in the Circuit Court.

(2). As the uncontradicted evidence in the case shows that the taxes on the Jane Nelson were paid, the sale of the land under the assessment against the Carskaddens gives the purchaser no better title than that warrant could confer.

(3). The title so obtained would enable the plaintiff to try the question of the true location of the Jane Nelson, and whether such location would leave room for the Carskadden, if that question was an open one.

(4). But that question is closed by the concurrent verdicts in the Circuit Court, not only as to the Carskaddens, but as to all persons succeeding to their title, whether by their act or by the act or operation of law.

The court therefore instructed the jury to find for the defendants.

Verdict and judgment for the defendants. The plaintiff took this writ of error, assigning for error the rulings on evidence and the instruction of the court as above.

*W. C. Kress* and *John H. Orvis* (with them *Samuel Linn* and *George A. Jenks*), for the plaintiff in error.

*Wm. H. Armstrong, (Henry C. Parsons,* and *Charles Corss* with him), for the defendants in error.

Mr. Justice STERRETT delivered the opinion of the court, October 5th, 1885.

This action of *trespass quare clausum fregit* was brought under the Act of March 29th, 1824 to recover treble damages for timber trees cut and removed from the tract of land in controversy. The pleas were, not guilty and *liberum tenementum,* on the latter of which the defence was exclusively based.

To maintain the issue on his part, plaintiff gave in evidence warrant dated October 3d, 1859, to Charles Carskadden for 400 acres, survey in pursuance thereof and patent to warrantee, October 14th, 1859. He also gave in evidence assessment of same tract for 1874 and 1875, and treasurer's sale to himself for the taxes, June 12th, 1876; and, after offering evidence of the alleged trespass by defendants, rested.

Defendants, on the other hand, gave in evidence warrant,

April 7th, 1794, to Jane Nelson, survey in pursuance thereof and patent to Joseph Fearon, April 29th, 1796. They then traced title to the Nelson tract into the Land Association from which they derived title. They also gave in evidence the following records of ejectments in the Circuit Court of the United States for the Western District of Pennsylvania, viz: No. 9 June Term 1868, Frederick A. Dreer v. David Carskadden, in which there was a verdict for plaintiff and judgment thereon July 3d, 1872. Also No. 2 September Term 1872, and No. 1 June Term, 1873, between same plaintiff and the widow, children and heirs of David Carskadden, deceased, in each of which respectively there was a verdict for plaintiff and judgment thereon entered June 28th, 1875.

The admission of these records is the subject of complaint in the first specification, and the rulings of the court as to their legal effect are complained of in the last two specifications. The court, holding that in connection with undisputed facts in the case the concurrent verdicts and judgments were conclusive of the location and title, directed a verdict for defendants. The correctness of this ruling is the controlling question in the case. If there was no error in that, the questions involved in the subordinate specifications become wholly unimportant.

The "Nelson" appears to be a chamber survey, returned as containing 459 acres and 153 perches, located on its northern, western and southern boundaries by its calls for older surveys. To reach these calls, necessarily increases the quantity of land. It is alleged that this excess in quantity together with the enchanced value of the land prompted speculative cupidity and led to the location of later warrants, covering the northerly as well as the southerly portion of the "Nelson" survey, and hence the litigation that ensued. The only question that ever did or ever could possibly arise between the "Nelson" and these much later surveys was that of its location. Neither of the parties, in any of the several trials that have been had, appears to have contested the title of the others on any other ground. Their respective titles were regularly derived from the Commonwealth, and each claim, upon its face, appeared to be complete. The question was solely one of location. As between the "Nelson" and "Carskadden" surveys, both parties asserted that the northerly line of the Nelson was the southerly line of the Gray, Martin and Tompson surveys for which it called. If the Nelson was limited to 130 perches south of that line, there was room for the Carskadden warrant. If the Nelson had a right to reach the Taylor land on its southerly call, and the White Oak, at northwest corner of the Taylor tract, called for in its western line, then there was no

room for the Carskadden warrant, and the latter, however perfect it might appear to be, had no unappropriated land to which it could attach. The *status* of the case is well expressed in one of the cases referred to, Dreer *v.* Carskadden, 12 Wright, 38, in which the same question of location was in issue. In that case the verdict and judgment were in favor of the Carskadden location, but it was reversed by this court, for reasons that will appear in the opinion of Chief Justice WOODWARD.

The learned president of the Common Pleas was clearly right in admitting the records of the Circuit Court and in holding that the concurrent verdicts and judgments, evidenced thereby, definitively settled the question of location, as between the Nelson and the Carskadden warrants and surveys, in favor of the former, and that the present plaintiff, being in privity of estate, is forever concluded.

The general rule, to which this case is no exception, is that judgments are conclusive between parties and privies: 1 Greenleaf Ev. Sect. 522, et seq.; 4 Minor's Inst. 718; Peterson *v.* Lothrop, 10 Casey, 223; Adams *v.* Barns, 17 Mass., 365. The term *parties* is of course well understood as including all, directly interested in the subject matter, who have a right to defend or control the proceedings and appeal: Giltinan *v.* Strong, 14 P. F. S., 242; and courts will even look beyond the nominal party and treat, as the real party, him whose interests are involved in the issue, and hold him concluded by any judgment that may be rendered: Peterson *v.* Lothrop, *supra.* *Privies* are those whose relationship to the same right of property is mutual or successive. In other words, privity denotes mutual or successive relationship to the right of property, title or estate. It may be in blood, in law, or in estate. A purchaser at sheriff's sale, for example, is in privity to the defendant's title; and, for like reason, we have no doubt a purchaser at treasurer's sale is in privity to the title, if any, that is divested by the sale and passes to him. In actions of ejectment, two verdicts and judgments thereon, upon the same title, are conclusive of the title between the parties and their privies, assignees or vendees. The bar of two such judgments is a statutory estoppel between privies as well as parties: Blackmore *v.* Gregg, 10 Watts, 222; Drexel *v.* Man, Jr. 2 Barr, 267.

The essential privity was not in the parties to the actions which determined the location of the Nelson survey, but in the right of property involved therein; and all parties subsequently coming into the title, no matter how, and relying on a right of property derived from either of the warrants and surveys, are visited with notice of the adjudication to which those surveys were subjected between the parties who were

then the owners. The last two judgments in the Circuit Court were entered June 28th, 1875, and the treasurer's sale, on which plaintiff relies, was made nearly a year thereafter. The purchaser at that sale had record notice that the Carskadden warrant had been laid on previously appropriated land, and therefore those claiming under it had no title. It is conceded that the Nelson tract was duly assessed for 1874 and 1875 and the taxes paid. Upon what principle then should the title to the latter be divested in favor of a purchaser who had at least constructive notice of these facts?

It was well said by the learned judge below, that if the Carskaddens were plaintiffs in this case they would be concluded by the verdicts and judgments in the Circuit Court. The taxes on the land in question having been paid, the sale under the assessment against the "Carskadden" gave the purchaser no better title than that warrant and survey could confer. He conceded that the title so acquired by the purchaser at treasurer's sale would enable plaintiff to try the question of the true location of the "Nelson," and whether such location would leave room for the "Carskadden," *provided* that was an open question; but, inasmuch as that question had been definitively settled and closed by the judgments in the Circuit Court, not only as to the Carskaddens, but as to all persons succeeding to their title, whether by their act or by operation of law, they were concluded.

It is unnecessary to discuss the remaining assignments. They are not sustained.

Judgment affirmed.

CLARK, J., dissented.