## Richardson's Estate.

*Wills—Trusts and trustees—Life interest with power to consume—Parties—Funeral expenses—Support and maintenance.*

1. Where it clearly appears from a will that a trust fund for a legatee for life may be consumed in whole or in part, in addition to the interest, for the legatee's maintenance and support, if the interest, "together with the other means" which the legatee may have, should be insufficient for that purpose, the legatee may demand payment of the whole fund for her support and maintenance, if necessary, but unless she does so in her lifetime, her administrators are not entitled to the unexpended balance and her next of kin are in no better position, if it appears that they contributed nothing to her support or maintenance, except in the way of gifts in her lifetime.

2. In such case, the administrators are neither parties nor privies to the subject-matter.

3. The term "support" is not restricted to mere necessities, but involves comforts of life as well.

4. Funeral expenses are not within the terms "support and maintenance," which apply only to means of subsistence during life.

Exceptions to auditor's report. O. C. Susquehanna Co., Aug. T., 1923, No. 36.

*Van Scoten & Little,* for exceptions.

*A. J. Archbald* and *E. R. W. Searle,* contra.

SMITH, P. J.—The present controversy exists relative to a claim against said estate upon distribution, before an auditor appointed by this court, by Emma D. Jewett and Bessie C. Warner, administratrices of the estate of Lillian C. Chamberlain, deceased, the basis of which is the language of W. L. Richardson's will duly probated, as follows:

"3. I give and bequeath to my executor and Trustee, hereinafter named, the sum of four thousand five hundred ($4500) dollars to be put at interest and the interest or income therefrom to be paid to Miss Lillian Chamberlain for and during her natural life.

"Should the interest or income from the said four thousand five hundred dollars, together with the other means which said Lillian Chamberlain may have, be not sufficient for her proper maintenance and support, then I direct that she be paid, in addition to the interest from the principal sum from time to time, amounts as will give her a proper living, maintenance and support, my intention being that said Lillian Chamberlain shall be properly supported and maintained, though it may consume a part or whole of said four thousand five hundred dollars, in addition to the interest therefrom. Should there remain any part of said sum of four thousand five hundred dollars after the decease of said Lillian, the same shall become part of my residuary estate and distributed as herein provided."

It appears from the evidence before the auditor that, following distribution of testator's estate, Miller S. Allen, the testamentary trustee thereof named in the will, received the trust fund of $4500, and apparently kept the same invested and at least paid annually the net income on that sum to Lillian C. Chamberlain, the *cestui que trust,* until about 1912, when the trustee, by the evidence, absconded. Later, William A. Titsworth was by this court appointed trustee to succeed him, and found available of such original trust fund the sum of $1200, which was kept invested by him and the net income paid to the *cestui que trust* until her decease, which occurred on ——— ———, 1923.

Thereupon her administratrices, the present claimants, filed their account, upon final confirmation of which the present auditor was appointed to make distribution of the balance shown of $1071.05, and before whom the present

claim was presented and the whole net fund of $987 was awarded to the claimants, administratrices of Lillian C. Chamberlain's estate, to the exclusion of the residuary legatees under the W. L. Richardson will, and, being objected to by the exceptions filed, we are called upon to pass upon its correctness.

It is contended in support of this claim that the manifest intention of the testator, by the language used in the second clause of the above quoted paragraph of his will, was the principal sum of $4500 of said trust as well as the income should be primarily chargeable with the support of the *cestui que trust*, and independent of her own earnings, and this notwithstanding the fact that from her services as nurse and such income as she had actually received from the two successive trustees, she had accumulated about $500 in the bank and at the time of her decease her estate inventoried $————, and conceding that the greater part of the time when not nursing she made her home, without expense, with her sisters, Mrs. Warner and Mrs. Jewett, as they each testify they made no charge, thus giving evidence of true sisterly affection generously acceded to by the members of their household.

In this connection, from the evidence the fact is well supported that the annual sums for Miss Chamberlain's proper living, maintenance and support, without sickness or other incapacity being implied, was from $500 to $600, and while we are governed by that sum from the evidence, we deem it a modest estimate.

The further contention, which the auditor appears to sustain, is that by this testamentary provision it was the testator's intention to make the *cestui que trust*, the life-tenant, the principal object of his bounty and to provide liberally for her to the extent of both the principal and income. In this we concur, and are also of the opinion that in her financial circumstances, as disclosed by the evidence, had she asked for it while W. A. Titsworth was trustee, she would have been entitled to receive.

Limiting these conclusions to the income only, the auditor has properly found as a fact, at the rate of 4 6/10 per cent. net annually for the ten years of William A. Titsworth as trustee on the original principal of $4500, Miss Chamberlain would have been entitled to have received $2070, and did receive during that time $570, or $1500 less than the trust paragraph provided for, and $513 less than the fund for distribution at bar.

The fact appears that Miss Chamberlain took up nursing for a livelihood, as her sister testifies, "about eight or nine years ago," and her compensation, as shown by the same and other witnesses, was $20 per week, and in which she was engaged about half the time, which would aggregate her earnings about twenty-six weeks, at $20, the sum of $520 each year for practically the period when the trust fund was $1200, and she received regularly the income thereof, $60 annually, less trustee's commission and tax, increasing her annual income by such sum.

It is strongly urged by the learned attorneys for the administratrices of her estate that, under the facts thus disclosed by the evidence, it was the trustee's duty to see that the purpose of the testator was carried out, by voluntarily paying her in her lifetime of the trust fund principal sufficient to pay the deficit of $1500 which they claim was correctly found by the auditor, and that she did not lose her rights thereto by not demanding it, and it so vested in her that her legal representatives are entitled to it, having not so been received by her, citing but one judicial decision from Pennsylvania in support, and being the only one at all applicable they or we have been able to find in her courts, also four from the New York courts. To these we will now refer.

Richardson's Estate.

In Reck's Appeal, 78 Pa. 432, the testamentary trust clause was: "My wife to receive the interest of $1000.00 . . . and should the interest be insufficient to provide for her, then as much of the principal as may be required . . . after the death of my wife the *balance* of the $1000.00 to be disposed of as the balance of my other property."

It was held that one with whom the widow made a contract for her maintenance for life could, after death, sue and recover against the husband's estate, even though no demand was made by her for any part of the principal while living. The court held that no such demand was required of her.

The will thus considered is distinguished from the one at bar by the absence from the former of any reference to any dependency of the *cestui que trust* upon her own or other *means* of *support* which appears in the latter. The facts of the two cases also differentiate them, while no demand for principal appears to have been made in either. In the former the claimant relied upon an express contract with the widow *cestui que trust* for her maintenance; it not having been compensated implied her own "insufficiency" of funds the will mentions and relegated the creditor to one whose claim was upon sufficient consideration; on the contrary, the claimants here are volunteers without a legal consideration to support their demands. The two sisters with whom Miss Chamberlain made her home much of the time expressly state they donated their hospitality, and in their representative capacity as administratrices of her estate they possess no higher status.

The testamentary trust clause in Holden *v.* Strong, 116 N. Y. 471, 22 N. E. Repr. 960, was in substance same as in Reck's Appeal (Pa.), cited above, and made no reference to independent means of support by the *cestui que trust*. In an action by the *cestui que trust* himself in his lifetime against the trustee to recover for his *part* support, the court below entered judgment for the defendant on the ground that evidence was absent of any abuse of discretion on the part of the trustee in not furnishing same; and notwithstanding, as the appellate court decided, the plaintiff was under the trust clause entitled to his support and maintenance according to his condition in life, even though he might be able to support himself by his own exertions, and of which the fact that he had thus accumulated a fund which he had deposited in a bank did not deprive him.

A like interpretation of similar testamentary trust clauses appears in In re Riley, 24 N. Y. Supp. 309; In re Dicekrman, 34 Hun (N. Y.), 588; Rezzemini *v.* Brooks, 194 N. Y. Supp. 749, and Manning *v.* Sheehan, 133 N. Y. Supp. 1006, as to the absolute right of the *cestui que trust* to support from both principal and interest of the trust fund, independent of independent estate or earnings of the *cestui que trust*. It is pertinent to note that in 34 Hun (N. Y.), 588, the trust provided her resort thereto was dependent upon "her judgment."

In the Pennsylvania case of DeWald *v.* Berkheiser, 19 Pa. Superior Ct. 570, being a suit in the Common Pleas upon facts of contract nearly identical with those in Reck's Appeal, 78 Pa. 432, to which we have already referred, the court below, having entered judgment for the plaintiff, was reversed because of lack of jurisdiction of the Common Pleas; but Porter, J., in his opinion, page 575, clearly affirms the controlling nature of the decision in Reck's Appeal. He there says, *inter alia:* "If she (the claimant) had any such right, it was enforceable only in the manner provided in Reck's Appeal, 78 Pa. 432, and Luckenback *v.* Luckenback, 175 Pa. 484."

We cannot see how the principle stated in Rahm's Estate, 28 Pitts. L. J. (N. S.) 453, is of much weight as applied to the contention here.

Again referring to the language of the testamentary trust paragraph at bar, we observe that it was not merely on the "insufficiency" of the trust fund thus created that the *cestui que trust* was authorized to draw upon the *corpus* for "her proper maintenance and support," but it was to be such, "together with the other means which said Lillian Chamberlain may have."

The language used is equivalent to "means of support," terms defined in authorities cited, note 24, page 1608, of 26 Cyc. "In its general sense, (as) all those resources from which the necessaries of life are or may be supplied, such as lands, goods, salaries, wages or other *means* of *income*. . . . In a limited sense, it signifies any resource from which the wants of life may be supplied." Justice Sharswood, in his opinion in Reck's Appeal, 78 Pa. 434, declares that "All technical rules of construction must give way to the plainly-expressed intention of the testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction." This language, as well as that in what follows on the same page with reference to the testamentary trust there being considered, in our opinion, applies in full force to that at bar. The intent here is clearly and intelligently expressed, and we do not omit the clarity of intent stated, "My intention being that the said Lillian Chamberlain shall be properly supported and maintained, though it may consume a part or whole of said four thousand five hundred dollars, in addition to the interest thereupon."

The term "support" is not restricted to mere *necessities*, but involves *comforts* of life as well: McMahon *v.* Sankey, 133 Ill. 636; and it was the intent of the testator that Miss Chamberlain was to be cheered by such, in part by resort to the *corpus* of the trust, if not otherwise by her "other means" secured. That practically only her necessities were supplied, and hardly these during her lifetime following the death of the testator, substantially by the generosity of her two sisters and their family, is apparent from the evidence; and it is already made to appear from the foregoing discussion that we are of the opinion that she would have been entitled to the whole of the trust fund remaining after its reduction to principal only of $1200, had she asked for it, and even without the asking, if the trustee had paid the same to her. The right of the claimants to recover must depend upon whether their status is that of either parties or privies to the right of property in controversy. Defined in Strayer *v.* Johnson, 110 Pa. 21, by Sterrett, J.: " 'Parties' include all directly interested in the subject-matter, who have the right to defend and control the proceedings and appeal . . . 'Privies' are those whose relationship to the same right of property is mutual and successive, . . . denotes mutual or successive relationship to the right of property, title or estate. It may be in blood, in law or in estate."

It is obvious without discussion that the claimants are not in any sense *parties* to the subject-matter, being the trust at bar; therefore, [they are] not directly interested. It will not be argued that the testator had any intention that they or any of the kin of Miss Chamberlain were to be the recipients or beneficiaries of this trust fund. He expressly provides otherwise. Neither are they privies to the subject-matter or to the Richardson estate of Lillian Chamberlain as to this trust fund. In legal parlance, they are essentially strangers thereto. Had a contractual relation existed between them and Miss Chamberlain in the latter's lifetime, as in Reck's Appeal, 78 Pa. 434, or had they furnished her, or for her, articles or services of necessity and comfort supporting a claim upon a *quantum meruit*, their status would have been otherwise more favorable. Having been furnished as a gift at the time and the quality of the transaction not changed in her lifetime, the law will not permit

a change now after her death; and, for another reason, her estate is not entitled to recover on this distribution. Having made no claim other than the interest during her lifetime, supporting herself in the manner which the *law* must assume she was satisfied with, even though she complained of the lack of such comforts and opportunities for the leisure she desired and greater resources which she should have received, this disappointment cannot result to the benefit of her estate as against this fund. We, therefore, are of the opinion the auditor erred in awarding the balance of the fund for distribution, $987, to the administratrices of Lillian Chamberlain, and our exclusion of their claim calls for our consideration of the status of the amount for her funeral expenses, which, by the evidence of Emma Jewett, appears to have been $325. From all the authorities, funeral expenses are not within the terms "support and maintenance," which apply only to means of subsistence *during life:* 37 Cyc., "Support," and citations in notes.

The will at bar made no provision for the payment of Miss Chamberlain's funeral expenses, and we decide they cannot be allowed or paid from this trust fund.

As an accounting and distribution with resultant costs were necessary, while the auditor's fees were substantially increased, no doubt, because of the controversy over the claim we have refused to allow, we are inclined to affirm the action of the auditor in deducting them from the trust fund, and if we are correct in rejecting the claim of the administratrices of the Lillian Chamberlain estate, this disposition of costs necessarily must dismiss the exception relative to costs filed on behalf of the administratrices of Lillian Chamberlain, deceased.

From Gerritt E. Gardner, Montrose, Pa.