# Danboro & Plumsteadville Turnpike Road Company v. Bucks County, Appellant.

*Practice, C. P.—New trials—Error of law—Abuse of discretion —Practice, Supreme Court—Appeals—Order granting new trial.*

1. A court can abuse its discretionary power as to the law as well as to the facts in passing upon an application for a new trial and when the granting of a new trial is based upon a plain and palpable error of law, applicable to the facts of the case, it is such an abuse of judicial discretion as will warrant a reversal of the order by the Supreme Court.

2. The Supreme Court will entertain an appeal from an order granting a new trial where it appears that at the trial the court directed a verdict for defendant on the theory that under the

existing statutes plaintiff had no cause of action, but at the hearing of the motion for a new trial decided that the construction of the statute adopted at the trial was erroneous and that a new trial ought to be granted. In such case the question is whether or not the construction of the statute adopted by the court at the hearing of the motion for a new trial was correct or erroneous and such question it is proper for the Supreme Court to consider.

*Turnpikes—Condemnation—Counties—State highway—Act of June 2, 1887, P. L. 306—Act of May 31, 1911, P. L. 468.*

3. The Act of June 2, 1887, P. L. 306, providing for the condemnation of turnpikes upon petition of taxpayers of the county was not repealed by the Act of May 31, 1911, P. L. 468, establishing the State Highway Department and providing for the taking over from counties or townships of certain existing public roads, and the fact that a certain turnpike was among the roads designated in said act as being subject to the jurisdiction of the State Highway Department did not preclude the condemnation of such turnpike upon petition of taxpayers under the said Act of 1887.

4. Where in such case viewers awarded damages to the turnpike company for the condemnation of the turnpike and on appeal to the Common Pleas Court the trial judge was of opinion that the Act of 1887 had been repealed by the said Act of 1911 and directed a verdict for defendant, but on the hearing of a motion for a new trial decided that his previous construction of such statutes was erroneous, he properly granted a new trial.

Argued Feb. 26, 1917. Appeal, No. 73, Jan. T., 1916, by defendant, from order of C. P. Delaware Co., June T., 1914, No. 5, granting a new trial, in case of President and Managers of the Danboro & Plumsteadville Turnpike Road Company v. County of Bucks. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Appeal from award of viewers in condemnation proceedings. Before JOHNSON, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court. The court subsequently set aside the verdict and granted a new trial. Defendant appealed.

*Errors assigned* were in setting aside the verdict and in granting a new trial.

*William I. Schaffer,* with him *Hiram H. Keller,* and *E. Wallace Chadwick,* for appellant.—The Act of June 2, 1887, P. L. 306, was repealed by the Sproul Act of May 31, 1911, P. L. 468, and the court had no jurisdiction to entertain the action.

*Harman Yerkes,* with him *V. Gilpin Robinson,* for appellees.—Proceedings under the Act of 1887 are not inconsistent with or repugnant to action by the State Highway Commission under the Sproul Act of 1911.

*William H. Keller,* First Deputy Attorney General, with him *Francis Shunk Brown,* Attorney General, for Commonwealth of Pennsylvania, Intervening Appellee.

Opinion by Mr. Justice Stewart, June 30, 1917:

This is an appeal from the order of the Court of Common Pleas of Delaware County setting aside a verdict rendered at the direction of the court and awarding a new trial. The case originated in Bucks County, where, upon the petition of twenty-five taxpayers of the county, addressed to the Court of Quarter Sessions, proceedings were commenced to condemn the Danboro and Plumsteadville Turnpike, a public road located in said county and owned by a company of the same name, with a view to make said turnpike free of tolls, under the provisions of the Act of June 2, 1887, P. L. 306. The case was there so far proceeded with that the jury of view appointed by the court in due course rendered an award of damages in favor of the turnpike company in the sum of $2,350. From this award the turnpike company appealed, and upon change of venue the issues were certified to the Common Pleas of Delaware County. Upon the trial of the case there it was developed that the turnpike that was sought to be condemned had been, by the later Act of

May 31, 1911, P. L. 468, known as the Sproul Act, made part of a State highway. Thereupon the trial judge, holding to the view that the effect of the later act was to work a repeal of the earlier under which the proceeding had been begun, gave binding instructions in favor of the ,defendant company, and a verdict was accordingly so rendered. Subsequently the court set aside the verdict and granted a new trial. The reason for this latest act by the court appears in the following brief opinion filed, "At the close of the plaintiff's case, the court directed the jury to render a verdict for the defendant. A careful reading of the legislation affecting the questions involved has convinced us that the direction was error. A new trial is therefore granted." Stated plainly, the new trial was ordered for error of law in holding that the act under which the proceeding was instituted had been repealed by the later Act of 1911. If the court erred in so holding, it adopted the proper remedy for correcting the error by granting a new trial. So the only question brought before us by the appeal is whether both these acts continue, or whether by the later the earlier is repealed. No express repeal of any of the provisions of the earlier act is asserted; but the appellant contends that there is such obvious inconsistency and conflict between the two acts, in essential particulars, that legislative purpose to repeal the earlier act is to be implied.

A preliminary question of practice, not at all affecting the merits of the controversy, has been suggested, which may as well be disposed of before proceeding to consider the main question. We have been reminded of the general rule that the granting or refusal of a new trial rests in the discretion of the trial judge, and it is only where that discretion has been abused that an appeal can be entertained. This court has been constant in the observance of this rule, however liberal it may have been in its construction. What is sometimes thought to be a departure from it is only another illustration of strict adherence, by giving it a more general application than

a strictly literal interpretation would seem to allow.
Strictly speaking, the law is never a subject resting in the
discretion of the trial judge; and when he errs in regard
to it in his instructions to the jury, it is by no means
exact to say that he has abused his discretion, but this
court has repeatedly held—the most recent case being
First National Bank of Birmingham v. Fidelity Title and
Trust Company, 251 Pa. 536,—that a court can abuse its
discretionary power as to the law as well as to the facts
in passing upon an application for a new trial, and that
when a new trial is based on a plain and palpable error
of law applicable to the facts of the case, it is such an
abuse of discretion as will warrant a reversal. If, in the
present case, the trial judge in his binding direction to
the jury to find for the defendant reflected a clear mis-
conception of the law governing the case, the proper
practice was observed when he directed a new trial; if
otherwise, and the new trial was ordered to correct some-
thing that needed no correction, but was in entire accord
with the law, such error would be palpable and this court
on review could set aside the order. We need no other
warrant for entertaining the present appeal than is
furnished by these authorities.

Returning to the main question: the contention can be
understood only as we have before us such main features
of the several acts involved as disclose the purpose and
object to be accomplished in the enactment of each. With
reference to the earlier act, the act under which the pro-
ceeding was had, it is only necessary to recite here the
title to the act, for therein is disclosed not only the pur-
pose and object of the act, but its scope and limitations
as well. It reads as follows: "An act authorizing the
condemnation of turnpike roads or highways heretofore
or hereafter constructed, wholly or in part, in any county
of this Commonwealth, for public use, free from tolls and
toll-gates, and the assessment upon the proper county of
the damages to which the owner or owners may be enti-
tled, by a jury of viewers duly appointed by the Court of

Quarter Sessions of the proper county, and providing for the maintenance of any such condemned turnpike, road or highway by the proper city, township or district." The purpose and scope of the later act are also disclosed in its title, and we recite here only so much of it as is sufficient to that end. It reads, "An act providing for the establishment of a State Highway Department by the appointment of a State Highway Commissioner, two Deputy State Highway Commissioners, chief draughtsman, superintendent of highways and staff assistants and employees, defining their duties and the jurisdiction of the State Highway Department,......providing for the taking over from the counties or townships of the Commonwealth certain existing public roads......describing and defining same by route numbers as the State Highways of the Commonwealth; providing for the improvements, maintenance and repair of said State highways solely at the expense of the Commonwealth, relieving the said townships or counties from any further obligation or expense to improve or maintain the same, and relieving said townships or counties of authority over the same...... providing for the payment of damages in taking of property or otherwise in the improvement thereof," etc. It is not contended that so far as the scope, object and purpose of the several acts are indicated by the respective titles, there is any such conflict as would prevent either act from operating in its own appropriate sphere without interference with the other; the real contention made on behalf of appellant is that there is to be found in the sixth section of the later act provisions from which is to be derived a clear legislative intent to repeal the earlier act, substituting for it the later act as adequate to meet all the conditions requiring legislative relief. The sixth section referred to reads as follows, "From and after the adoption of this act, all those certain existing public roads, highways, turnpikes and toll roads, or any parts or portions thereof, subject to the provisions hereinafter made in the case of turnpikes and toll roads forming and

being main traveled roads or routes leading to the state line and between principal cities, boroughs or towns, shall be known, marked, built, rebuilt, constructed, repaired and maintained by and at the sole expense of the Commonwealth, and shall be under the exclusive authority and jurisdiction of the State Highway Department, and shall constitute a system of State Highways.". It is at this point that we meet the stress of the argument made in support of the contention that a purpose to repeal the earlier Act of 1887 is derivable by implication. Were we to have regard to this section of the act standing by itself, disassociated from the other provisions of the act which are supposed to qualify if not to negative directly any such import as is imputed to it, the argument based thereon would not be without force. In such case the inconsistency between the two acts would be at once apparent. If the act as a whole was to become effective at once upon its adoption, and if with its enactment all the public roads classified—the appellee's road being within the classification—were to pass immediately under the exclusive authority and jurisdiction of the State highway department, the conclusion that a repeal of at least so much of the earlier act as subjected to its operation the various turnpikes made subject to the provisions of the later act, would seem most probable. How is the language of this sixth section to be interpreted? The provision as to when the act is to become operative is too unmistakable in its terms to call for interpretation; it interprets itself and we can neither add to nor take away from the terms used. But this concession adds little to the force of the argument for appellant's contention, since it implies no more than that from and after the passage of the act the turnpikes classified are subjected to such control, even to appropriation, by the highway department, as is permitted by the act for the attainment of the ends contemplated. Up to this time the State highway department has attempted nothing with respect to the appellee's turnpike; nevertheless, the act has continued operative dur-

ing all this period. The right of the highway department to interfere with it in the way pointed out in the act could have been asserted any time since the adoption of the act, and it is in this sense that the words "from and after" are to be understood. The difficulty is encountered when the latter clause of the section is reached which directs that all such roads as are classified in the act shall, from and after its adoption, "pass under the exclusive authority and jurisdiction of the State highway department." Were we to be confined to the terms here used in ascertaining the legislative intent, the problem would not be of easy solution. If they be given the meaning appellant insists upon, they would give large support to its contention; if otherwise, the whole contention must fail, since it rests on no other support. The obscurity arises in large part from the use of the word "jurisdiction." If all these roads passed immediately upon the adoption of the act under the exclusive jurisdiction of the highway department, it may well be argued that thereupon the jurisdiction of the courts that had theretofore exercised jurisdiction in this particular case was terminated, since the act contains no saving clause; but this supposes that by the word "jurisdiction" was meant just what it ordinarily and properly implies, the power of hearing and determining causes and doing justice in matters of complaint. The word necessarily implies an investiture of judicial functions. Was it meant that the State highway department should constitute a tribunal to hear and determine such questions as are here involved, or other similar questions? That cannot be, for the act nowhere invests the department with judicial functions, nowhere defines or limits the jurisdiction conferred, nowhere prescribes any procedure to be observed, and nowhere confers any power to make or enforce any order or decree; and yet among other purposes of the act, as these are set forth in the title, is, "defining the jurisdiction of the State highway department." Nothing by the most liberal construction can be found in the

entire act suggesting any attempt to define the jurisdiction conferred, nor can anything be found in the act that indicates what meaning the legislature attached to the word. We are relieved of the necessity of determining just what was meant. It is sufficient for present purpose to know that it is impossible to attach to it a meaning that would rob the established legal tribunals of the jurisdiction they have so long exercised in such cases. We see no reason whatever for supposing that a change so radical and sweeping was within the legislative intent. The rejection of that meaning puts an end to the discussion, for the reason, that appellant's contention can only prevail in case of acceptance of the view urged as to the proper meaning and significance of the sixth section of the Act of 1911, and we have found this impossible. So clearly is this so for the reasons indicated that we deem it unnecessary to discuss the corroborative features found in the act supporting the conclusion reached. The exceptions are dismissed, and the order of the court granting a new trial is affirmed.