Westmoreland Chemical & Color Co. *v.* Public
Service Commission.

Pittsburgh & Lake Erie Railroad Company's
Appeal.

Argued March 20, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*J. Norman Martin,* of *Martin & Martin,* for appellant.—The action being against the Commonwealth, there can be no recovery; the entire damage is consequential and for this the Commonwealth is not liable.

The Public Service Commission Act created no liability.

The railroad and railway companies are not liable: Hoffer v. Reading Co., 287 Pa. 120; State Highway Route No. 72, 265 Pa. 369.

*Clyde Gibson,* with him *William McElwee, Jr.,* for appellee.—The apportionment of these damages among these parties, defendant and others, is res judicata.

We have clear constitutional and statutory authority for consequential damages against all parties defendant, and both a right and a remedy provided by law: P. R. R. v. Duncan, 111 Pa. 352; Chester Co. v. Brower, 117 Pa. 647.

OPINION BY MR. JUSTICE KEPHART, May 7, 1928:

For many years Gardner Avenue, an extension from Moravia Street, crossed the Shenango River over a

county bridge in the City of New Castle. The street crossed at grade the tracks of a railroad, on the west side of the river and on the east side those of three railroads. In 1913, the bridge was destroyed by a flood, and Lawrence County petitioned the public service commission for an order abolishing the grade crossings. The commission made the State, the county, the City of New Castle and the railroad and railway companies parties to the proceeding. In July, 1918, an order was issued directing that the grade crossings be abolished, and substituting, for that highway, a bridge above grade, in line of Mahoning Avenue extension to Moravia Street, and later dividing the costs and damages between the parties mentioned, excluding the State. The work of actual construction did not begin until the middle of 1923, and was not completed until December, 1924. The bridge, in spanning the river and crossing the railroads above grade, was of such elevation that, when the city street was reached, it was necessary to build an approach or abutment to meet it. It was a solid concrete wall of a width occupying most of the street and extending along the Westmoreland Chemical & Color Company's property and other land as it abutted on Mahoning Avenue. The approach at one end of this property was 6½ feet high, and, at the end nearest the bridge, approximately 17 feet.

Proceedings were then instituted before the public service commission to determine the amount of damages, if any, to the various properties abutting the improvement. From that award, an appeal was taken to the court of common pleas by the county, and the jury awarded in the case of the Westmoreland C. & C. Co., $10,000, on which judgment was entered. The case is now here on appeal. No part of plaintiff's property was taken, and the claim is for consequential injuries, the extent of which was settled by the verdict of the jury.

The contention of appellant, one of the railroad companies, is, first, that the State is not liable for consequen-

tial damages, and, as it is not liable, public service companies can not be made liable, in view of our decision in Hoffer v. Reading Co., 287 Pa. 120. The question may be stated in another form: Is the abutting owner entitled to recover damages for a change of grade, and, if so, by whom must it be paid? The question involves a consideration of the powers, duties and liabilities of the State, county and municipality in relation to streets.

The highways, roads, streets and bridges of the Commonwealth, apart from private ownership such as turnpike companies, are the property of the State; it may set up any agency to administer, control and maintain them. In the early days, to encourage commercial relations between the counties and other states, and, because of our sparsely settled districts, the State, acting either directly or through many bodies known as commissions, laid out highways between distant points in counties or through counties. In 1876, these roads, built or laid out, were placed under local control and the State withdrew actively from road building or planning. The work was continued by the municipalities and townships under the General Road Law which had functioned since 1836. During the period of the State's activity, many private concerns also built roads and bridges. When township roads increased, some of these so-called turnpikes fell into disuse, and have been placed under local or county control.

Generally speaking, the duty to improve, maintain and repair highways thereafter devolved on the various municipalities through which the highways ran, cities, boroughs and townships, and later counties which had within them abandoned turnpikes. The governing laws affecting each class of municipal divisions were clearly set forth, and there was little difficulty in determining civil responsibility for acts such as here concern us.

Through the advance of transportation facilities, and the exercise by the State of its regulatory control of public utilities, material advances in the law as to the

management and administration of certain highways have been made. One of the first efforts was under the Flinn Act, named after its sponsor, the Hon. William Flinn of Pittsburgh. Through it, counties were enabled to take a system of highways within their borders, and, acting through judicial authority, have them adopted as "county roads." This act was substantially reënacted in 1911. In the same year, the Sproul Act, named after the late Governor Sproul, was passed. By it, a large number of highways in the Commonwealth were consolidated into a system of highways. The county and the State were given exclusive control over such ways, with all the burdens of liability that had been formerly affixed to the municipality from which the road was taken: Hoffer v. Reading Co., supra. But when a claim is made against the State for failure to perform a duty of maintenance or repair, recovery may still be contingent on enabling legislation. Supplementing each system, the State and county may contribute to underlying municipalities to aid in the improvement of their roads. This is by invitation of the municipalities; such efforts ordinarily do not, so far as counties are concerned, carry with them any responsibility beyond the fact of contribution. See, as to State liability for State aid roads, Schlosser v. Manor Twp., 293 Pa. 315.

The State, to properly exert its regulatory control over public utilities, gave the public service commission a modified but exclusive control over certain dangerous conditions in our highway systems. It may order abolished dangerous crossings over railroads. In all these changes, this court has endeavored to adhere to the fundamental rules laid down early in our history, as a part of governmental policy. As part of that policy, before the Constitution of 1874, an abutting owner could not recover damages for the change of grade: Struthers v. Dunkirk, etc., Ry. Co., 87 Pa. 282, and cases cited. The reasons are well stated in those opinions. In a case similar to the facts now before us, we held our present

Constitution gave the right to consequential damages: Chester Co. v. Brower, 117 Pa. 647; Delaware Co.'s App., 119 Pa. 159, even though no statute imposed the liability. In such case, recovery could be had in an action at law classified under old forms of pleading as an action on the case: P. R. R. Co. v. Duncan, 111 Pa. 352; Chester Co. v. Brower, supra, p. 656. We there stated that a county was a municipality within article XVI, liable for consequential damages to property injured by change of grade, though the State had not provided a remedy. These cases were in opposition to repeated expressions of the court as to the effect of similar constitutional provisions. Since then, these decisions have been modified, if not set aside. We have returned to our former policy of placing the right to damages within the grant of the sovereign, and the rule is now well settled that damages for consequential injuries can not be recovered by a property owner under the present Constitution, unless the legislature gave that right and imposed such liability on the municipality; it may determine the class of owners to which the compensation mentioned in the Constitution may be given (Donnelly v. Pub. Ser. Com. and P. R. R. Co., 268 Pa. 345; State Highway Route No. 72, 265 Pa. 369; Spang & Company v. Com., 281 Pa. 414; Hoffer v. Reading Co., supra); but unless the legislature, by statute, so provides, the owner is without remedy. The question was put at rest in Jamison v. Cumberland Co., 48 Pa. Superior Ct. 33, affirmed in 234 Pa. 621, where our former decisions were before the court. In discussing the earlier cases, it was there stated that, when counties erect bridges pursuant to statutory authority, and, under such laws property is taken, the constitutional provision requires them to make compensation for property taken, injured or destroyed. The effect of that decision was to reduce Chester Co. v. Brower, supra, and Delaware Co.'s App., supra, to the recovery of damages under a statute.

The bridge in the present case is, in effect, a county bridge, or can here be so regarded. A county is not liable for consequential damages by a change of grade of a highway (Wangner v. Bucks Co., 82 Pa. Superior Ct. 448), nor is a township of the first class (Herrington's Petition, 266 Pa. 88) as possibly limited by section 485 of the Township Code, p. 840, nor of the second class (Wagner v. Salzburg Twp., 132 Pa. 636); the same rule for damages applies in the vacation of streets or roads (Saeger v. Com., 258 Pa. 239; Hedrick v. Harrisburg, 278 Pa. 274), unless the legislature provides otherwise. The Commonwealth is not liable for damages occasioned by the appropriation of private property in the absence of legislation: Snively v. Washington Twp., 218 Pa. 249; Herrington's Petition, supra.

The cases just cited also show that, in the changes in highway control, unless antecedent legislation obligated the municipality from which the highway was taken to pay for consequential or other damages, neither the county, nor the State, directly, or through the public service commission, could be held liable. Of course, if direct legislation, creating the right in the owner and imposing the liability, appeared in the enabling acts, the county or the State, directly, or through the public service commission, would be liable. We held, in State Highway Route No. 72, supra, where a change of grade occurred in a primary state highway in the exclusive proprietorship of the State, that abutting owners had no claim under section 8 of article XVI of the Constitution for property taken, injured or destroyed; there being no antecedent legislation which imposed the liability on the township, the State Highway Act did not enlarge the abutting owner's right, nor fix liability on the State. In Hoffer v. Reading Co., supra, the public service commission directed the vacation of a grade crossing and a change of grade in front of an abutter's property. It was claimed the Public Service Law fixed liability and the right to damages against the State and

the companies. We again held that, unless liability was expressly imposed by that statute, or given by a prior statute, the Commonwealth would not be liable where the bed of a state highway was raised or lowered: citing Spang & Co. v. Com., supra. We there said that the Public Service Law contemplated the existing right to compensation under some statute, and merely determined how that sum should be apportioned. It did not attempt to impose any new liability for alterations of a grade, as has been expressly directed in some classes of municipalities. To the same effect is Donnelly v. Pub. Ser. Com. and P. R. R., supra, where the obligation to pay consequential damages was rejected under the Constitution and sustained under the Public Service Company Act, supplemented by the Borough Code and the Act of June 22, 1917, P. L. 627, which expressly obligated boroughs to pay for such injuries. Knoll v. Harborcreek Twp., 86 Pa. Superior Ct. 423, if not in accord with these decisions, must be considered overruled.

As an illustration of the exclusive and responsible control, this case may be noted, in Blainesburg-West Brownsville Road, 293 Pa. 173, just handed down, in which Justice SCHAFFER wrote the opinion. Originally, the County Road Act of 1893, reënacted in 1911, was intended to include borough streets as well as township roads. Later the feature as to borough streets was repealed, and the right of the county to exercise proprietory control over such roads was taken from it, remaining effective, however, as to township roads. Other legislation gave borough authorities the privilege of inviting the county to aid in the improvement of its streets between two improved sections of county roads upon entering into agreements for that purpose. Work was done by the county, and a change of grade was made in front of an abuttor's property. We held in that case, as the county was there by invitation only, and there was no legislation fixing liability on the county beyond its contribution for so acting (barring negligence), it could

not be held liable. The proprietary control over the street was still in the borough, and the county acted merely as an agent in doing the work. For all purposes, the street was still a borough street, the county had no power to interfere with the location of the street in a borough; it had no power to lay it out, open or, of its own motion, construct the road; that right remained in the borough, and that municipality was liable under its existing statutes for consequential injuries attaching to the borough through precedent legislation. Substantially the same conclusion in a similar case was reached by the Superior Court with respect to a state highway: Fetherolf's Petition, 84 Pa. Superior Ct. 514.

We determine responsibility for cost and damages in the present case from the principles discussed. The case is a combination of a grade crossing vacation and a county bridge case. The parties here acted under the compulsion of the public service commission, and we will consider it as so constructed, though legislation governing counties may aid. The Act of July 26, 1913, P. L. 1374, section 12, article V, as amended by section 1 of the Act of July 17, 1917, P. L. 1025, provides: "The commission shall also have exclusive power......to order any crossing......at grade......to be......abolished, according to plans......and reasonable terms and conditions to be prescribed, by the commission...... The compensation for damages which the owners of adjacent property, taken, injured, or destroyed, may sustain ......shall be......paid......by the public service companies or municipal corporations concerned...... The commission shall have the right to recover, for ......the Commonwealth......as debts......from the public service......companies, or municipal corporations, in such amounts or proportions against each as may be determined by the commission,......the amount of the damages or compensation awarded to the owners of adjacent property by the commission." The legislation which imposes liability for consequential dam-

ages with respect to abolishing grade crossings on cities of the third class, was noted in Hedrick v. Harrisburg, supra, and may be found in the Code and other legislation which gives rise to such claims for the change of grade of a street, or in private agreements with railroads. The county's liability as to damages in eliminating grade crossings, building of bridges, and taking land therefor is gathered from the following acts: Act of June 7, 1901, P. L. 531; Act of May 28, 1913, P. L. 367; section 1 of the Act of May 28, 1913, P. L. 368, as amended by later acts; Act of June 15, 1911, P. L. 970, amending section 1 of the Act of June 11, 1879, P. L. 146; Act of March 26, 1903, P. L. 71, section 4; and the Act of May 24, 1917, P. L. 276, section 1.

The State may ex gratia pay a part of the damage if it wishes to, but is not under legal compulsion; and its designation by the act as party defendant liable is merely a means of affording a convenient responsible party to the owner in the first instance, with liability over as fixed by the commission against the municipality and public service companies affected. We hold that existing legislation permitted the public service commission to allot among the municipalities and public service companies (see later discussion) the cost and damages incident to abolishing a grade crossing.

Are the approaches part of the bridge construction, so that its cost should be included as part of the damage? This should not be open to question. The approaches are a necessary part of the bridge: Com. v. Loomis, 128 Pa. 174. It is also part of the public highway at common law, and is the law of this State: Rapho Twp. v. Moore, 68 Pa. 404; Penn Twp. v. Perry Co., 78 Pa. 457; Com. v. Central Bridge, 12 Cush. 242; Washer v. Bullitt Co., 110 U. S. 558, 564. How can a bridge be said to be complete without the proper means of access? The bridge is incomplete until everything necessary for its proper use is supplied: Penn Twp. v. Perry Co., supra; Francis

v. Franklin Twp., 179 Pa. 195, 202; Com. v. Hamilton, 80 Pa. Superior Ct. 240, 243.

Appellant further contends that the commission had no authority to order it to contribute to the payment of consequential damages for injuries to property that did not immediately abut it (the railroad's property), or for a construction that extended over the river 1,000 feet beyond the railroad right-of-ways. It was suggested by the court below that the question of apportionment was res judicata, as the commission had determined the percentage of liability and the order is unappealed from. We agree with the learned court below that, when all parties appear and take part in a given matter, they should be estopped if they do not follow the act as the law provides; but the Supreme Court of the United States disagreed with us on the doctrine of res judicata in a similar case: N. Y. C. v. N. Y. & Pa. Co., 281 Pa. 257, s. c. 271 U. S. 124. Whether the question should be raised by appellant, when called on to pay, or at this time, is not quite clear; appellant, though an intervening defendant, is protecting its rights at each step. To avoid difficulty, we will pass on the main question.

It has long been the policy of this State to bring about as rapidly as possible the elimination of dangerous crossings. For more than half a century, railroad companies have been invested by the legislature with power to abolish grade crossings. The Public Service Act confers that jurisdiction on the commission. To successfully eliminate the grade crossings, found by the commission to be dangerous, a continuous structure was necessary in its entirety. That a railroad company may be compelled to contribute to the abandonment or abolishing of a grade crossing without invasion of its right under the Fourteenth Amendment to the Constitution of the United States is also clear. The legislature may, as a police regulation for the public safety, require the abolition of existing crossings at grade, so that one shall pass over the other by means of a bridge, viaduct or under-

crossing, or it may delegate to a municipal corporation, or through the instrumentality of a commission, the power to make such changes: N. Y. & N. E. R. R. Co. v. Bristol, 151 U. S. 556; 33 Cyc. 290. The extent of this contribution would be the cost of the structure in its entirety, which includes the approaches and damages to property injured by the change of grade. The State, through the commission, may lawfully require the expense to be paid either by the railroad company or the county, township or municipality where the crossing is situated, jointly or in several allotments as their interest or benefit may determine. There is no constitutional objection to a requirement that the county, township or municipality shall pay a portion of such expenses, and our statutes provide for an apportionment between them and the company: 33 Cyc. 292. Everything which is fairly incidental to the changes in the railroad crossing may be considered.

After a careful consideration of all matters, the judgment is affirmed.