Greiner *v.* Commonwealth, Appellant.

Argued April 17, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Claude T. Reno,* Attorney General, *Forrest Mercer* and *Leonard Talone,* for appellant.

*Aaron S. Swartz, Jr.,* of *High, Dettra & Swartz* and *Victor J. Roberts,* for appellee.

OPINION BY MR. JUSTICE LINN, May 8, 1939:

This appeal by the Commonwealth is from judgment on a verdict for land damages in an amount which the Commonwealth agreed was fair if there was any liability at all, but which was challenged on the ground that no land was taken from the plaintiff. Whether any was taken depends on the width of the appropriation for a turnpike made long ago by Perkiomen & Reading Turn-

pike Company, created under the Act of March 20, 1810, P. L. 156. The question is whether a width of 50 feet or 60 feet was taken; it is not disputed that if the turnpike was 50 feet wide the plaintiff is entitled to hold his verdict.

Only one of the four assignments of error needs discussion. The first assignment—to the refusal to grant a new trial—must be overruled because there is not the slightest indication of abuse of discretionary power in dismissing the motion. The third and fourth assignments complain of the jury's answers to special interrogatories, (1) that the turnpike had been laid out 50 feet wide, and (2) that a plan in evidence showed a highway encroachment on plaintiff's property. The jury rendered a general verdict for the plaintiff so that the assignments complaining that the learned court below "approved" the special findings are of no consequence because, while advisory, they were not controlling, the important thing was the general verdict. Special interrogatories frequently serve a very useful purpose and there is no suggestion in this case that any prejudice to the Commonwealth resulted from the fact the jury was asked to answer the two questions.

The only remaining assignment is to receiving in evidence records of the Quarter Sessions of Montgomery County in proceedings instituted by the county to condemn the turnpike in which the evidence was that it was 50 feet wide. It was the highway so taken by the county that was subsequently taken over by the state. The roads of the Commonwealth, except those privately owned, such as turnpikes, belong to the Commonwealth which may designate agencies to administer them.[1] By the Act of 1887, P. L. 306 (now superseded

---

[1] *Tranter v. Allegheny County Authority*, 316 Pa. 65, 74, 173 A. 289; *Westmoreland Chemical, etc., Co. v. Public Service Commission*, 294 Pa. 451, 144 A. 407; *Garr v. Fuls*, 286 Pa. 137, 133 A. 150; *Jamison v. Cumberland Co.*, 48 Pa. Superior Ct. 32, affirmed 234 Pa. 621, 83 A. 582.

by subsequent legislation) the Commonwealth authorized its agencies, the counties,[2] to condemn turnpike roads.[3]

When Montgomery County, in the proceeding begun in 1899, appropriated this turnpike pursuant to the Act of 1887, the road became a public highway of the state, to be maintained as provided in section 11 of the Act, but it remained subject to any future action by the state consistent with the constitution. In the exercise of this power, the Commonwealth passed the Act of May 31, 1911, P. L. 468, 36 PS section 1 et seq., generally known as the Sproul Act, providing, inter alia, for the taking over by the Commonwealth of highways, among them, this particular road, included in the designation in the statute as Route One Hundred and Forty-Six (P. L. 490).

The burden of proof was on the plaintiff, who, in order to satisfy that requirement, put in these records and read from them the evidence of the then secretary [4] of the turnpike company. This was done over the Commonwealth's objection and is the subject of the second assignment.

The Commonwealth was not a formal party to the condemnation proceedings; the moving party was the county; it appropriated the turnpike which the Commonwealth subsequently took over pursuant to the Sproul Act. The examination of the witness read in

---

[2] As to agency, see *Com. ex rel. v. Walker,* 305 Pa. 31, 34, 156 A. 340.

[3] *Turnpike Road Co. v. Montgomery Co.,* 228 Pa. 1, 76 A. 726; *Danboro, etc., Co. v. Bucks Co.,* 258 Pa. 391, 102 A. 171, are examples of the exercise of the power.

[4] The record under review states the condemnation "was opposed and there was testimony taken and cross-examination at great length, and one of the witnesses who testified was D. B. Mauger, the Secretary, who was 78 years old in 1891; therefore he is of course dead and it is impossible for us to produce him and we want to offer a portion of his testimony which is relevant here, only that portion as to the width of the road."

evidence had been elicited by the Master[5] and in one proceeding was: "Q. What is the width of the road? A. Fifty feet. Q. That is, the width of your road is fifty feet? A. Fifty feet." As to the other proceeding, the following appears: "I offer also the statements of the same man, D. B. Mauger, secretary of the Perkiomen and Reading Turnpike Company in Condemnation proceedings, No. 35, December Term, 1899, as recorded in Book 196, page 317 in the Court of Quarter Sessions of Montgomery County. Mr. Talone: Objected to. The Court: Same ruling and same exception. 'By the Master: Q. What is the width of the turnpike from fence to fence? A. Fifty feet. Q. Do you own the turnpike or just only the right of way? A. Right of way.'" The plan of "the road attached to the proceedings in condemnation No. 49 March Term 1892 in the Court of Quarter Sessions of Montgomery County," showing a taking of 50 feet in width, was also put in. Considering the relations existing between the state and the county with respect to the highways of the state in general, and that they were in privity to the title to this highway, we think the evidence was admissible for two reasons. The available records of the turnpike company left the point under investigation in some doubt, the minutes indicated that the company had appropriated fifty feet, though one or two resolutions might be said to support an inference that sixty feet had been taken. The jury would be aided in solving the doubt by evidence showing the width of the road for which the company claimed compensation in the proceeding in which it was to the interest of the county, representing the public, to pay for no more than the turnpike company had to deliver. The Commonwealth became the successor in title to the county. The condemnation record was therefore relevant in ascertaining what the Commonwealth took from

[5] Appointed pursuant to section 2 of the Act under which the proceeding was conducted.

the county as bearing on the plaintiff's claim in this suit that Commonwealth had taken from him land outside the limits of the turnpike.[6] Compare *Strayor v. Johnson*, 110 Pa. 21, 1 A. 222; *Peterson v. Lothrop*, 34 Pa. 223.

It is also settled that acts and declarations of a land owner made during his ownership showing the extent of his possession or interest may be shown against one claiming under or through him *(Dawson v. Coulter*, 262 Pa. 566, 106 A. 187; *Bennett v. Biddle*, 150 Pa. 420, 24 A. 738; *Weidman v. Kohr*, 4 S. & R. 174) and we see no reason why the Commonwealth should not be subject to this rule. Wigmore, Evidence, Vol. II (Ed. 1904) p. 1733, says: "At first sight, indeed, it seems fair enough to argue even that a person against whom former testimony is now offered should have to be satisfied with such cross-examination as any other person whatever, in another suit, may have chosen to employ. It is entirely settled that in some such cases he must be satisfied, namely, in cases where the other person was a privy in interest with the present party. The reason for such cases is that there the interest to sift the testimony thoroughly was the same for the other person as for the present person. The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and

---

[6] The only cases cited by appellant, *Payne v. Bennet*, 2 Watts 427, and *Kyper v. Sheaffer*, 42 Pa. Superior Ct. 277, do not touch the point under discussion.

the determination of this ought to be left entirely to the trial judge."

Judgment affirmed.